**Camille G. FORD, Appellant,**

v.

**Maurice TURNER and Carl Alexander, Appellees.**

**No. 86–356.**

District of Columbia Court of Appeals.

Argued April 9, 1987.

Decided Aug. 5, 1987.

Richard E. Gardiner, with whom Robert Dowlut, Washington, D.C., was on brief, for appellant.

Victor E. Long, Asst. Corp. Counsel, with whom James R. Murphy, Acting Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on brief, for appellees.

Before NEBEKER, FERREN and BELSON, Associate Judges.

FERREN, Associate Judge:

Appellant, Camille G. Ford, challenges the trial court's summary judgment for appellees, Maurice Turner and Carl Alexander, on her suit under 42 U.S.C. § 1983 (1982). Ford alleges that Turner and Alexander violated her right to due process while acting in their official capacities as Chief and Property Clerk, respectively, of the Metropolitan Police Department. Ford contends, more specifically, that appellees received custody of guns alleged to be unregistered firearms seized by the police from her deceased sister's apartment, and that they failed to notify her, as personal representative of her sister's estate, of the seizure, of the government's intention to keep the guns permanently, and of her right to challenge the government's action. Ford argues, therefore, that the statute under which appellees have retained these items without requiring such notice is unconstitutional. Ford also contends the statutory requirement that a claimant bear the burden of proving she is entitled to return of the property is unconstitutional. Because we agree that Ford did not receive the constitutionally required notice, we reverse and remand for entry of summary judgment for Ford as to liability (without reaching the burden-of-proof issue). We also remand for further proceedings as to damages.

I.

In June 1980, Ford discovered the body of her sister, Marie Owens, in Owens' apartment. Owens had been stabbed to death by an unknown assailant. Members of the Metropolitan Police Department searched the apartment and removed seven

items that appeared to be firearms.[1] *See* D.C.Code §§ 6–2301 *et seq.* (1981 & 1987 Supp.). These items had no apparent connection with the homicide. After the police officers learned that these items had not been registered in the District of Columbia, they delivered them on June 6 to the Metropolitan Police Department Property Clerk, who continues to have custody.[2]

In an August 15, 1980 letter to the Property Clerk, Ford submitted evidence that she had been appointed administratrix of her sister's estate on August 8 and that the police had informed her husband "that the guns were not registered in the District of Columbia and, therefore, could not be returned." She challenged the authority of the Property Clerk to retain the guns and noted that "the conclusion of the Property Clerk is not determinative when applied to the particular facts in the present case." She requested permission for her representative to examine the guns. There was no reply. According to the government's brief, the Property Clerk interpreted Ford's legal challenge to the Clerk's authority "as an assertion that he had no jurisdiction in the matter, and therefore he did not hold a hearing to determine whether those items should be returned." Ford wrote another letter to the Property Clerk on October 7, 1980 requesting that her appraiser examine the guns and suggesting that she might file a lawsuit to regain possession. The Property Clerk replied by letter that he had no objection to the proposal to have the guns examined. He did not, however, explain why he had not turned over the guns to Ford; nor did he tell Ford how she could challenge his continued possession of the guns. In January 1981, Ford's attorney wrote to the Property Clerk requesting that he not destroy the guns and asking for their return. There is no reply of record.

Having failed, through correspondence, to obtain the guns, Ford filed suit in the United States District Court for the District of Columbia on July 30, 1981. Ford alleged that appellees, "acting under color of law and without due process of law, have wrongfully deprived plaintiff of her property." She sought return of the guns, monetary damages, and a declaratory judgment that the Property Clerk "lacked statutory authority to seize or retain" the guns. In November 1981, after appellees had filed an answer, the District Court, for reasons that are unclear and do not appear in the record, but which the parties do not dispute, transferred the case to Superior Court. In 1984, Ford filed an amended complaint adding a claim (not relevant on appeal) and incorporating the complaint originally filed in federal court. Over the next three and a half years, the parties engaged in legal skirmishing in Superior Court without resolving any of the basic legal issues. In August 1985, however, the trial court granted appellees' motion to dismiss the complaint.[3] Ford filed a motion for reconsideration which, because of the retirement of Judge McArdle, was referred to Judge Nunzio. On January 27, 1986, Judge Nunzio, after a hearing, entered an order granting appellees' alternative motion for summary judgment.[4] Ford filed a timely appeal.

1. The seven items seized were: L.C. Smith 12 gauge double barreled shotgun, with outside hammers; Mauser rifle, 8 x 57 millimeter caliber; M 1 Garand rifle, .30/06 caliber; British Enfield rifle, .303 caliber, without magazine; British Enfield rifle, .303/06 caliber without a bolt and magazine; barreled receiver of a British Enfield, .303 caliber rifle; Smith & Wesson 5–shot hammerless hinged frame revolver, .38 Smith & Wesson caliber.

2. At the time the property was seized, the Property Clerk was Lieutenant Clifton J. Porter. Appellee Carl Alexander is Porter's successor.

3. This order said:
   Upon review of Defendants' Motion to Dismiss the Complaint, or, in the Alternative, for

Summary Judgment, the statement of material facts as to which no genuine issue exists, the supporting memorandum of points and authorities, any opposition, and the entire record herein: it is this 20th day of August, 1985;
   ORDERED: That [defendants'] motion to dismiss the complaint be and the same is hereby granted.

4. This order said:
   This case is before the Court on the defendants' motion to dismiss or, in the alternative for summary judgment, and plaintiff's motion for summary judgment. Upon consideration of these motions, all memoranda in opposition or reply to such motions, oral argument

Although Ford's original suit alleged that the Property Clerk had retained the guns impermissibly and that Ford was entitled to their return, subsequent motions and other papers filed in Superior Court make clear that the only issue before the trial court on summary judgment was whether Ford had been deprived of her constitutional right to procedural due process by appellees' failure to notify her of the seizure of the guns for a specified reason and of her right to a hearing to contest that seizure.[5]

## II.

We begin from the premise that " '[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' " *Memphis Light, Gas & Water Division v. Waters,* 436 U.S. 1, 13, 98 S.Ct. 1554, 1562, 56 L.Ed.2d 30 (1978) (quoting *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950)). *See also Mennonite Board of Missions v. Adams,* 462 U.S. 791, 795, 103 S.Ct. 2706, 2709–10, 77 L.Ed.2d 180 (1983); *Greene v. Lindsey,* 456 U.S. 444, 449–50, 102 S.Ct. 1874, 1877–78, 72 L.Ed.2d 249 (1982). It is also well established that "some form of hearing is required before an individual is finally deprived of a proper-ty interest." *Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18 (1976). Bearing these notice and hearing requirements in mind, we must examine the procedures that appellees believe have justified their permanently keeping the seized guns.

## A.

Appellees contend that the seized guns are unregistered "firearms" within the meaning of D.C.Code §§ 6–2302, –2311, –2312 (1981); that they are, therefore, "dangerous articles," subject to confiscation as "nuisances," within the meaning of § 22–3217(a) or (b); *see id.* § 22–3214 (prohibiting possession of certain "dangerous weapons"); that § 22–3217(c) authorizes police officers to take into custody and to surrender to the Property Clerk items they believe are dangerous articles discovered "in the course of a lawful arrest or lawful search";[6] and that § 22–3217(d) provides Ford with a constitutionally adequate means of challenging the police seizure and/or retention of the guns without need for a separate notice.[7]

More specifically, once the Property Clerk has custody of dangerous articles, § 22–3217(d)(1) supplies the mechanism for determining ownership and for establishing whether the Property Clerk may keep the items permanently:

Within 30 days after the date of such surrender, any person may file in the office of the Property Clerk of the Met-

---

by the parties, and the entire record herein, it is this 24 day of Jan[uary] 1986:

ORDERED: That *defendants' motion for summary judgment is granted.*

FURTHER ORDERED: That plaintiff's motion for summary judgment is denied.

FURTHER ORDERED: That final judgment be and the same hereby is entered for defendants.

**5.** Ford made clear that due process was the only issue on summary judgment in her Plaintiff's Opposition To Defendants' Motion To Dismiss The Complaint Or, In The Alternative, For Summary Judgment; And Plaintiff's Cross Motion For Summary Judgment, where she stated: "[T]he only ground for the cause of action is *that Plaintiff* was denied her right to due process in that she has been deprived of her property without constitutionally adequate notice and hearing." In the same motion, she explained that she had "not asked in her complaint that this court resolve the question of whether she is entitled to the return of the property. Rather, she complains that she was not given a meaningful opportunity to contest the deprivation of her property...." Appellees do not dispute Ford's characterization of the issue to be decided. They contend that the procedures followed have satisfied the minimum requirements of due process.

**6.** Ford does not challenge the police seizure of the guns and their delivery into the custody of the Property Clerk pending a lawful disposition.

**7.** Although Ford does not concede that D.C.Code § 22–3217 (1981) applies to the items seized, resolution of that issue is not necessary to our decision.

ropolitan Police Department a written claim for possession of such dangerous article. Upon the expiration of such period, the Property Clerk shall notify each such claimant, by registered mail addressed to the address shown on the claim, of the time and place of a hearing to determine which claimant, if any, is entitled to possession of such dangerous article. Such hearing shall be held within sixty days after the date of such surrender.

The statute itself does not require the Property Clerk to notify persons whose property has been seized. The statute, therefore, is premised on an assumption that any possible claimant will—somehow—have constitutionally adequate notice of the seizure and can make a timely claim. As this case illustrates, however, that assumption can be fallacious.

In the first place, a claimant may not be the owner; Ford, for example, is an administratrix who could not possibly have filed a claim within 30 days of "surrender" of the items to the Property Clerk; she was not appointed administratrix until August 8, 1980, 63 days after the Property Clerk had received the guns.

Second, the fact that Ford attempted to file a written claim a week later on August 15, based on actual notice of the Property Clerk's custody of the guns, does not imply that she has received constitutionally adequate notice. She has never been formally notified of the reasons why the government is holding the property or of the steps she can take to challenge the government's action. The "dangerous weapons" or "dangerous articles" statute on which the government apparently relies, D.C.Code §§ 22–3214 through –3217, is not even arguably constructive notice of the government's position and of Ford's rights, for it is not the only statute governing the Prop-

erty Clerk's retention of property subject to claims. D.C.Code § 4–157 (1981 & 1987 Supp.), for example, applies to lost or stolen property in the hands of the Property Clerk, as well as to property returned to the Property Clerk "alleged to have been feloniously obtained or to be the proceeds of crime." And § 4–160(a) applies, among other things, to "all lost property coming into possession of any member of the police force." Moreover, § 4–160(b) applies to "property of a deceased person" coming into the custody of the Property Clerk. Thus, absent more specific notice, a person in Ford's position cannot possibly know the provision of the District of Columbia Code on which the Property Clerk is relying.

Third, given Ford's position that the guns at issue, *supra* note 1, are not unregistered "firearms" or otherwise "dangerous weapons" or "dangerous articles," there is no obvious reason why the government would be relying exclusively on §§ 22–3214 through –3217. Finally, because some sections of the Code provide for the Property Clerk to notify a claimant by registered mail under certain circumstances, *id.* § 4–157(b), or to ascertain the legal representative of a deceased person who owned the property, *id.* § 4–160, or to give published notice for a period of three consecutive weeks, *id.* § 4–161, there is no reason to believe that the legislature intended any section of the Code, by itself, to provide constitutionally adequate constructive notice of the reasons why the Property Clerk may be holding particular property.

■ Appellees concede that, although Ford obviously had learned about the seizure of her sister's alleged firearms, Ford "did not receive notice of her rights." [8] This failure to give Ford notice "reasonably calculated" to inform her of the reasons why the Property Clerk held the guns and

---

**8.** The deposition of the former Property Clerk, Clifton J. Porter, indicates that, as a matter of practice, Porter would send a form letter to an owner of seized property when he believed the owner was not aware that the Property Clerk had taken possession. Apparently, this letter informed the owner or other claimant that the Property Clerk had the property and instructed the claimant to bring whatever proof he or she

may have to support the claim. The record does not contain a copy of this form letter, and thus we cannot ascertain whether it meets due process requirements. In any event, the parties agree that Ford has never received an official notice in this case. Moreover, the statute on which appellees rely, D.C.Code § 22–3217 (1981), does not require notice to anyone.

of the means by which Ford could challenge appellees' continued custody of them violated due process. *Memphis Light, Gas & Water Division*, 436 U.S. at 14, 98 S.Ct. at 1563 ("The purpose of notice under the Due Process Clause is to apprise the affected individual of, and permit adequate preparation for, an impending 'hearing.' ") (footnote omitted). At a minimum, she was entitled to notice that certain property had been seized, that the District sought to retain the property pursuant to specified authority, and that a claimant could take particular steps to challenge the District's action. *See Willis v. United States*, 787 F.2d 1089, 1093 (7th Cir.1986).

■ In *Willis*, the government had sought forfeiture of an automobile allegedly involved in illegal narcotics activities. *See* 21 U.S.C.A. § 881 (1981 & 1987 Supp.). Willis filed suit to challenge the government's action, arguing (among other things) that the Drug Enforcement Administration's notice of intent to seek forfeiture was constitutionally inadequate in that it failed to advise that "his pursuit of an administrative, rather than judicial, procedure would constitute a waiver of his right to a hearing." *Willis*, 787 F.2d at 1092. The notices sent by DEA had included a form letter informing Willis that his automobile had been seized for violation of the statute, that the United States was taking steps to effect a forfeiture, and that Willis must take certain specified steps either to challenge the action administratively at DEA or to file an action in federal district court. Willis then filed a petition with DEA for remission of seized property; it was denied without hearing on the basis of the "facts." The DEA letter did not point out that a hearing would be afforded only in the district court, not at DEA. The letter, however, had enclosed a copy of a public notice of the intended forfeiture that DEA was required by statute to publish, as well as copies of the relevant statutes and regulations and the name of an official whom Willis could contact if he had questions. Calling it a "close case" and acknowledging there was "no question that the language in the letter Willis received would not be adequate notice in itself," *id.*

at 1093, the court rejected his claim on the ground that all the elements of the DEA notices "*taken together*, sufficiently informed Willis that if he wanted a hearing in which to contest the seizure and forfeiture, he had to file a claim and bond in order to force the matter into [federal] district court." *Id.* at 1093 (emphasis in original). Applying *Willis* to the present case, we can only conclude that Ford has been denied her constitutional right to due process; in no respect was she informed of a particular statutory right to contest the government's retention of the seized items at a hearing before the Property Clerk.

### B.

Appellees not only have conceded in their brief that Ford received no official notice of the seizure or of the reason for it, but also have acknowledged that this failure of notice "probably prevents the clerk from asserting that her claim is untimely." They contend, nonetheless, that Ford's 42 U.S.C. § 1983 (1982) action must fail because there has been no final deprivation of property and thus no violation of due process. Relying on *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), appellees argue that, because Ford was entitled either to receive a post-deprivation hearing before the Property Clerk pursuant to D.C. Code § 22–3217 (1981) or perhaps § 4–157, or to file an action in Superior Court "perhaps for replevin," *see id.* § 16–3701, she cannot maintain a § 1983 claim.

■ Appellee's argument misses the point. In the first place, Ford twice wrote the Property Clerk, followed by a letter from her attorney, asserting her right to the guns. Although these letters did not specifically request a hearing, the Property Clerk should have been expected to schedule one, given his responsibilities under any arguably applicable provision of the Code.

■ Second, appellees' argument is unresponsive to the fundamental concern that Ford has never received constitutionally adequate notice of her rights. *Supra* Part II.A. The availability of various legal actions through which Ford may be able to

contest the retention of the alleged firearms does not eliminate the government's obligation to inform her that the Property Clerk intended, for a specified reason, to retain the property taken from her sister's apartment unless she invoked certain procedures to recover it. Indeed, by acknowledging that D.C.Code § 4–157 (1981) or § 16–3701, as well as § 22–3217, may apply, appellees implicitly concede that Ford has not been notified of the legal grounds for the Property Clerk's continued retention of the guns. In effect, therefore, they concede there is no basis, absent a hearing itself, for concluding that the guns at issue are "dangerous" weapons or articles within the meaning of §§ 22–3214 through –3217.

Finally, *Parratt* is inapposite. It concerned prison officials' allegedly negligent loss of an inmate's property. The inmate had sought relief under 42 U.S.C. § 1983 (1982), but the Supreme Court held he did not state a valid due process claim:

> [T]he deprivation [of the inmate's property] did not occur as a result of some established state procedure. Indeed, the deprivation occurred as a result of the unauthorized failure of agents of the State to follow established state procedure. There is no contention that the procedures themselves are inadequate....

451 U.S. at 543, 101 S.Ct. at 1917.[9] The Court also adverted to the existence of state law remedies which "could have fully compensated" the inmate for his loss. *Id.* at 544, 101 S.Ct. at 1917.

While it may be true that Ford could file a replevin action or initiate administrative proceedings under D.C.Code §§ 4–157 through –160 or § 22–3217 (despite the absence of notice of the provision on which the government relies), the key distinction from *Parratt* is that Ford is not challenging an unauthorized negligent tortious act by a District of Columbia official that deprived her of due process of law. Rather, she is challenging the adequacy of

the notice procedures themselves, as established by District of Columbia law. Furthermore, the concerns in *Parratt* are fundamentally different from those in this case. *Parratt* concerned conduct that ordinarily would be subject to state tort law. The Supreme Court, therefore, was understandably concerned about elevating straight-forward tort claims into lawsuits of constitutional dimension. Here, in contrast, Ford complains about the procedures —or, more accurately, about the lack of procedures—established by the government. Appellees' argument under *Parratt*, therefore, would be germane only if Ford were claiming that appellees had negligently misplaced or destroyed the alleged firearms sometime after they had been taken into custody—and after appellees had given Ford adequate notice of the seizure and of her right to a hearing.

The Supreme Court itself has recognized the inapplicability of *Parratt* to claims challenging the constitutionality of state procedures. In *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982), Logan filed a complaint with the Illinois Fair Employment Practices Commission alleging unlawful termination of his employment because of a physical handicap. Apparently because of a bureaucratic letdown, the Commission scheduled a factfinding conference after expiration of the 120–day period within which the statute required the conference to be held. The Illinois Supreme Court concluded that the 120–day period was jurisdictional, ordered dismissal of the complaint, and rejected Logan's due process and equal protection claims. The employer had successfully argued that *Parratt* applied to Logan's claim because she could file a suit for redress under Illinois law. The Supreme Court disagreed:

> This argument misses *Parratt*'s point. In *Parratt*, the court emphasized that it was dealing with "a tortious loss of ... property as a result of a random and

---

9. In *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Court reconsidered *Parratt*'s statement that a negligent loss amounted to a "deprivation," 451 U.S. at 536–37, 101 S.Ct. at 1913–14, and concluded that negli-

gent tortious conduct by a state official, though causing injury, does not constitute a deprivation under the due process clause. *Daniels,* 106 S.Ct. at 665. This decision, in part overruling *Parratt,* is irrelevant here.

unauthorized act by a state employee ... not a result of some established state procedure." 451 U.S. at 541, 101 S.Ct. at 1916. Here, in contrast, it is the state system itself that destroys a complainant's property interest ... whether ... through negligence, maliciousness, or otherwise. *Parratt* was not designed to reach such a situation.

*Logan,* 455 U.S. at 435–36, 102 S.Ct. at 1157–58. Accordingly, to hold that the availability of replevin (or any other action) precludes Ford from challenging the constitutionality of a procedure established by law would eviscerate § 1983 as a means of redressing constitutional violations.

### C.

■ Appellees also contend Ford's claim must fail without regard to notice because she had not disputed that the items in the Property Clerk's custody are unregistered firearms. This argument is unpersuasive; the only issue on summary judgment is the alleged deprivation of procedural due process—a failure of notice—which is not dependent on the merits of the underlying claim. As the Supreme Court has noted, "denial of procedural due process [is] actionable for nominal damages without proof of actual injury." *Carey v. Piphus,* 435 U.S. 247, 266, 98 S.Ct. 1042, 1054, 55 L.Ed.2d 252 (1978).

> Because the right to procedural due process is "absolute" in the sense that it does not depend upon the merits of a claimant's substantive assertions, and because of the importance to organized society that procedural due process be observed ..., we believe that the denial of procedural due process should be actionable for nominal damages without proof of actual injury.

*Id.* at 266, 98 S.Ct. at 1054 (citations and footnote omitted). *See also District of Columbia v. Woody,* 452 A.2d 324, 326 (D.C. 1982). This language from *Carey* disposes of appellees' contention.

### D.

For the reasons elaborated above, we reverse summary judgment for appellees and remand for entry of summary judgment for Ford as to liability.

### III.

■ We turn to the issue of damages. The Supreme Court recently has reiterated how to calculate damages for violations of constitutional rights. "[T]he level of damages is ordinarily determined according to principles derived from the common law of torts" and may include "not only out-of-pocket loss and other monetary harms, but also such injuries as 'impairment of reputation ..., personal humiliation, and mental anguish and suffering.'" *Memphis Community School District v. Stachura,* 477 U.S. 299, 106 S.Ct. 2537, 2542–43, 91 L.Ed.2d 249 (1986) (quoting *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974)). *Accord, Henry v. Gross,* 803 F.2d 757, 768 (2d Cir. 1986) ("Damages are properly awarded for civil rights violations when the plaintiff has suffered an actual loss as a result of a constitutional deprivation.... [C]ompensable injuries may include not only monetary losses such as out-of-pocket expenses but also injuries such as 'personal humiliation' and 'mental anguish.'") (quoting *Stachura,* 106 S.Ct. at 2543). If it turns out that Ford is not entitled to return of the items held, she still may be able to prove damages attributable solely to appellees' failure to give her proper notice. And, as noted earlier, even "in the absence of proof of actual injury, [she would be] entitled to recover ... nominal damages." *Carey,* 435 U.S. at 248, 98 S.Ct. at 1044.

Because Ford has not yet had an opportunity to present evidence on the damages issue, we must remand to the trial court for that purpose.[10] Inevitably, Ford's damages will be affected by the outcome of her

---

10. In evaluating Ford's claim for damages, the trial court should consider the applicability of D.C.Code § 22–3217(g) (1981), which provides: "The Property Clerk shall not be liable in damages for any action performed in good faith under this section." *See also id.* § 4–157(c) (similar provision applicable to lost, stolen, or abandoned property in custody of Property Clerk). We express no views on how these provisions may affect Ford's claim.

efforts to recover the property taken from her sister's apartment. Accordingly, the trial court should stay the proceeding, after remand, until resolution of Ford's effort to recover that property. Because appellees now make it clear they believe they have authority to keep the guns under D.C.Code § 22–3217 (1981), Ford should file a claim with the Property Clerk and proceed with the hearing, subject to de novo review in Superior Court. *Kuhn v. Cissel,* 409 A.2d 182, 184 & n. 3 (D.C.1979); *see also Wilson v. United States,* 424 A.2d 130, 132 (D.C. 1980).[11]

■ Appellees have conceded that Ford is entitled to a hearing before the Property Clerk. Ford urges this court to "provide guidance for the conduct" of the hearing. She alleges that the items held by the Property Clerk are not "dangerous articles" within the meaning of D.C.Code § 22–3217 (1981) and thus that they are not forfeitable under D.C.Code §§ 6–2301 *et seq.* (1981). She further asserts that, even if § 22–3217 applies, it "is constitutionally inadequate since it places the burden on the claimant to show that the property was not subject to forfeiture." We decline to address these issues; because there has been no hearing, they are not ripe for decision. While it may be true that Ford will be able, sometime in the future, to claim she has been injured through the procedures she challenges, any decision bearing on the merits of her claims "would serve merely as an advisory opinion." *Banks v. Ferrell,* 411 A.2d 54, 57 (D.C.1979). We decline the opportunity to give one.

*Reversed and remanded.*

---

**11.** D.C.Code § 22–3217(d)(3) (1981) expressly authorizes a claimant to file an appeal in Superior Court. The Code does not mention whether and, if so, how the District of Columbia or anyone else can challenge a Property Clerk's decision to return the property to a claimant. This issue, however, is not before us and thus we express no opinion about it.