**Abraham KUFLOM, Petitioner,**

v.

**DISTRICT OF COLUMBIA BUREAU
OF MOTOR VEHICLE SERVICES,
Respondent.**

No. 87–211.

District of Columbia Court of Appeals.

Argued Jan. 7, 1988.
Decided April 20, 1988.

Edward F. Kearney, Washington, D.C., for petitioner.

Mary L. Wilson, Asst. Corp. Counsel, with whom Frederick D. Cooke, Jr., Acting Corp. Counsel at the time the brief was filed, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before FERREN, BELSON and TERRY, Associate Judges.

FERREN, Associate Judge:

Abraham Kuflom, a taxi driver in the District of Columbia, appeals from a decision by the Bureau of Motor Vehicle Services (BMVS) to revoke his driver's permit because of twelve points on his driver's record. We reverse and remand.

I.

From January 31 to September 15, 1986, Kuflom received six tickets for moving violations. Initially, he did not respond to these tickets. When, however, BMVS sus-

pended his driver's permit for failure to respond, D.C.Code § 40–615(d)(1) (1981); 18 DCMR § 304.1 (1987), he paid the fines in full in order to lift the suspension. Construing payment of the fines as Kuflom's admission of liability on the tickets, however, BMVS assessed twelve points for the six violations, 18 DCMR § 303.1, and notified him that, for this reason, his driver's permit was subject to revocation. *Id.* § 303.3(b). Upon receipt of the notice, Kuflom retained counsel, denied the charges represented by the tickets, and requested hearings to challenge them at the D.C. Bureau of Traffic Adjudication (BTA), an administrative tribunal in charge of holding hearings on, determining dispositions for, and assessing penalties for, certain traffic infractions. D.C.Code § 40–603 (1981); 18 DCMR § 9001 (1987). Despite Kuflom's earlier admission of liability by paying the tickets, BTA granted these so called infraction hearings and scheduled them for March 3 to 23, 1987.

On December 4, 1986, three months before the first infraction hearing, BMVS hearing examiner Donovan L. Gay conducted a hearing on the proposed revocation of Kuflom's driver's permit based on the twelve points. At this revocation hearing, Kuflom's counsel asked to stay the proceedings pending the outcome of the infraction hearings. He argued that Kuflom had paid the tickets not as an admission of liability but merely to prevent suspension of his license for failure to respond. Counsel also pointed out that one of the six tickets listed a nonexistent police badge number. This ticket would be dismissed at the infraction hearing, he said, because no officer could be located to prosecute. The implication was that, without this ticket accounting for two of the twelve points, 18 DCMR § 303.3 would authorize a suspension, but not the proposed revocation, of Kuflom's license.

The hearing examiner denied Kuflom's request for a stay and proceeded with the revocation hearing. The examiner noted that Kuflom had accumulated two other tickets for moving violations after the six violations that would be the subjects of the infraction hearings. Kuflom had denied

one of these, however, and a hearing was pending. The other ticket, issued on September 16, 1987, was for operating after suspension. The hearing examiner believed this matter was pending in Superior Court. Kuflom asserted that the charge had been dropped but produced no documentary evidence to support his assertion. In any event, because Kuflom had not paid the fines for these tickets or otherwise been found liable for these alleged infractions, they did not add to his "points" total.

After the hearing, the examiner revoked Kuflom's permit for six months because of "12 points." The hearing examiner stated that he would consider granting Kuflom an occupational permit if Kuflom obtained a favorable disposition on the ticket for operating after suspension. On the following day, after Kuflom had made such a showing, the hearing examiner granted the occupational permit allowing Kuflom to drive a cab Sunday through Friday, 7:00 a.m. to 5:00 p.m. Kuflom appealed the revocation to the Director of BMVS, who affirmed it on February 19, 1987. Kuflom then petitioned this court for review.

After the infraction hearings in March 1987, all six tickets were dismissed. Two (including the one with the mistaken badge number) were dismissed because the issuing police officer failed to appear at the hearing. Three were dismissed when the issuing officers failed to recall the circumstances or otherwise failed to present a *prima facie* case. The last one, alleging liability for an illegal U–turn, was dismissed when Kuflom presented evidence showing there was no traffic sign forbidding a U–turn.

After dismissal of four of the six tickets, Kuflom petitioned BMVS for termination of his revocation, which BMVS granted on April 8, 1987. Effective that date, all reference to the revocation supposedly was deleted from Kuflom's traffic record. His counsel asserted at oral argument on appeal, however, that references to the revocation remain in Kuflom's files. Furthermore, the record is not up to date in other important respects. By May 8, 1987, Kuflom's traffic record showed that only four

of the six tickets had been dismissed by March 20, 1987, and that only the corresponding eight points had been removed. The May 8 record continued to show four points representing the other two tickets dismissed on March 23 and May 29.

## II.

Kuflom appeals the revocation of his license. BMVS concedes that this issue is not moot, despite termination of the revocation, because of possible collateral consequences. Kuflom argues, first, that payment of a fine does not amount to a "conviction" for purposes of the point system; thus, he says, BMVS was not justified in revoking his license based on points assessed for tickets he had paid. Second, Kuflom argues that the hearing examiner abused his discretion in denying a stay of the revocation hearing when infraction hearings had been scheduled to hear Kuflom's challenges to the tickets upon which the notice of proposed revocation was premised. While we disagree with the first argument, we find merit, on this record, in the second. Accordingly, we reverse and remand.

## A.

The District of Columbia Municipal Regulations establish a point system under which liability for certain traffic offenses results in the assessment of points that, collectively, can result in suspension or revocation of the offender's license. Upon receipt of an infraction notice ("ticket"), one must respond in one of several ways, as advised on the back of the ticket itself. D.C.Code § 40–614(b) & (c) (1981); 18 DCMR § 3000.3 (1987) (ticket to state how and when to answer and consequences for failure to answer). One may admit the infraction alleged in the ticket, admit it with an explanation, or deny it altogether. D.C.Code § 40–615(a) (1981); 18 DCMR § 3006. If one admits to, is formally convicted of, or is otherwise found liable for

certain infractions, points are entered on his or her traffic record. *Id.* § 303.1. An accumulation of eight points justifies suspension of one's license; twelve points justify revocation. *Id.* § 303.3. More generally, the regulations also authorize license suspension or revocation when a driver has been convicted of, or found civilly liable for, a pattern of traffic offenses that indicates disrespect for traffic laws and a disregard for the safety of other persons or property. *Id.* §§ 302.6, 302.8. The payment of a fine is "equivalent to a conviction." 18 DCMR § 9901 (1987).

■ Kuflom paid the fines for his six tickets without explanation or protest, resulting in "convictions," *id.*, giving rise to twelve points on his record. These twelve points were enough for revocation. *Id.* § 303.3. Kuflom contends that payment of a ticket does not constitute a "conviction," but he offers no persuasive argument to counter the plain language of the regulation that "the payment of a fine ... shall be equivalent to a conviction." *Id.* § 9901.[1] He argues that he paid the fines, not as an admission of liability, but in order to lift the suspension of his license for failure to answer the tickets. That argument is unavailing. Under the relevant statute and regulations, Kuflom was required to answer each ticket within fifteen days to prevent suspension of his license. D.C.Code § 40–615(d); 18 DCMR § 304.1. He failed to do so and thus paid the tickets to resume driving privileges. Kuflom, however, could have answered on time without paying a fine or otherwise admitting liability. Timely denial of liability, or admission with explanation, would have prevented suspension just as effectively as paying the tickets later cured it. Kuflom was only required to *answer. Id.*

Kuflom apparently knew he could deny an infraction charged in a ticket and obtain a walk-in hearing at BTA, for he did just that with respect to a ticket he received on September 30, 1986, for running a red

---

1. *See also* D.C.Code § 40–615(c) (1981) ("A person admitting that an infraction occurred shall, at the same time he submits his [or her] answer, pay the civil fine...."); 18 DCMR § 3006.2 (1987) ("Answers of 'Admit' shall be accompanied by ... payment in full of the scheduled fines and penalties....").

light—two months before he received the notice of proposed revocation based on the six earlier tickets and retained counsel. Thus, it is likely that, when Kuflom paid the six tickets, he also knew he could have denied the tickets at a walk-in hearing.

In any event, even if we assume Kuflom did not actually know he simply could have denied the six tickets to prevent suspension of his license for failure to answer, he should have known. The tickets themselves told him that a timely answer was required to prevent suspension.[2] Kuflom argues, nonetheless, that he did not know his payments would trigger the point system and thus supply the basis for revoking his license. His subjective state of mind when he paid the fines, however, cannot determine the legal effect of payment when that effect has been prescribed by statute and regulations and has been well publicized.[3] Information about the point system appears not only in DCMR but also, of particular significance here, in at least two leaflets distributed by the District of Columbia government. The Department of Public Works issued one leaflet specifically stating that accumulation of twelve points can result in revocation of a driver's license. BMVS distributed the other "Traffic Safety Leaflet" describing "the D.C. Point System." This leaflet explains in more detail the point schedule and the consequences of point accumulation. It unequivocally announces that "[w]hen 12 points are accumulated in the driver's file, his [or her] privilege of driving is lost and his [or her] operator's permit revoked." It is reasonable, therefore, to deem the general public aware of the point system, including the fact that an accumulation of points, based on traffic violations, can result in revocation of one's license. Because of the information on the back of the ticket itself, moreover, it is also reasonable to deem one aware that payment of a ticket is an admission of the charged violation. *See supra* note 2. Accordingly, the fact that Kuflom did not intend for his payment of tickets to cause the assessment of points does not preclude revocation of his license based on admitted infractions.

### B.

▪ Because paying the tickets amounted to admissions of liability tantamount to convictions, 18 DCMR § 9901, it is not clear why BTA granted infraction hearings to determine liability on the tickets Kuflom already had paid. Were these, in effect, to be hearings on a motion to reconsider? Where did the agency derive authority to exercise discretion as to issues already resolved by its own regulations? Our examination of the statutory and regulatory framework for BTA hearings reveals no express authority for reopening the issue of liability after it has been resolved by payment.

▪ A traffic ticket—notice of infraction—is a summons and a complaint. D.C. Code § 40–614(a). A person served with such a notice must answer within fifteen days. *Id.* § 40–615. When a person denies, or admits with explanation, the infraction alleged, he or she is entitled to a hearing at BTA. 18 DCMR §§ 3008.1, 3008.2. When a person admits an infraction, however, he or she need not appear at a hearing to adjudicate it, D.C.Code

**2.** Although no ticket was entered into the record on appeal, both parties agree that the tickets included information, as required by D.C.Code § 40–614 (1981), about how and when to answer, *see* 18 DCMR § 3000.3, and that failure to answer "shall by operation of law result in a suspension of his District operator's permit." D.C.Code § 40–614(c). They also agree that the tickets issued to Kuflom did not contain information about the point system.

**3.** In general, everyone is charged with knowledge of statutory provisions. *North Laramie Land Co. v. Hoffman,* 268 U.S. 276, 283, 45 S.Ct. 491, 494, 69 L.Ed. 953 (1925). In *Ford v. Turn-er,* 531 A.2d 233 (D.C.1987), however, we held that constructive knowledge of the statute alone was not constitutionally adequate notice. *Id.* at 237. In *Ford,* there was evidence that the legislature had not intended for the District of Columbia Code itself to provide constructive notice. Further, appellant Ford had credibly contested the applicability of the statute that allegedly provided her constructive notice, for it was unclear which statutory provision applied. No analogous circumstances exist in this case. Moreover, unlike *Ford,* the statutory notice here has been supplemented by regulations and pamphlets.

§ 40–615(c); upon receipt of an admission of infraction, BTA must enter an appropriate order. *Id.* § 40–616(d). This order "shall be treated as an adjudication that an infraction has been committed." *Id.* § 40–614(e). A person aggrieved by such an order may seek review in the Board of Appeals and Review within fifteen days of service with the notice of decision. *Id.* §§ 40–632, –634; 18 DCMR §§ 3014.1, 3014.9. "An appeal limited in scope to the sanctions imposed may be had where an answer of 'Admit' or 'Admit with Explanation' was entered at the hearing." 18 DCMR § 3014.7. The regulations do not address whether the scope of, or procedure for, the agency appeal is the same when the answer of "admit" is entered by means of payment without a hearing; presumably, it is.

█ In contrast with the right to appeal the sanction for an admitted infraction to the Board of Appeals and Review, neither the statute nor the regulations explicitly authorize a hearing examiner to reconsider the admission itself. Counsel for Kuflom, however, advised the court at oral argument (and counsel for the government did not disagree) that BTA grants hearings to reconsider traffic ticket admissions as a matter of routine if not of right. Perhaps BTA finds authority in a generous reading of 18 DCMR § 1004.1 (1987).[4] In any event, whatever the basis was for granting Kuflom's infraction hearings, we conclude that, once these hearings had been granted and scheduled, hearing examiner Gay could not properly have refused to stay the revocation hearing pending the outcome of the infraction hearings.

█ In considering a motion to stay, the hearing examiner was required to consider four factors: whether the movant was likely to succeed on the merits, whether denial of the stay would cause irreparable injury, whether granting the stay would harm other parties, and whether the public interest

favors granting a stay. *Barry v. Washington Post Co.,* 529 A.2d 319, 320–21 (D.C.1987); *In re Antioch University,* 418 A.2d 105, 109 (D.C.1980); *Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.,* 182 U.S.App.D.C. 220, 222, 559 F.2d 841, 843 (1977); *Virginia Petroleum Jobbers Association v. Federal Power Commission,* 104 U.S.App.D.C. 106, 110, 259 F.2d 921, 925 (1958).

It may have been difficult for Kuflom to show irreparable injury. Although revocation was likely to cause him substantial inconvenience, it was not clear that such injury would be irreparable because Kuflom was told he would receive an occupational permit during the period of revocation if he could clear up a seventh ticket, which he did. Thus, the irreparable harm factor weighed against a stay. *Virginia Petroleum Jobbers,* 104 U.S.App.D.C. at 110, 259 F.2d at 925 ("The key word in this consideration is *irreparable.* Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough.") (emphasis in original).

The elements of potential harm to other parties and to the public interest are inconclusive. A stay could mean risking a dangerous driver on the road for at least three more months (until after the infraction hearings). On the other hand, a stay would promote the public interest in sound procedure and judicial economy, since the revocation issue would be deferred until the underlying question of the infractions themselves had been finally resolved.

In contrast with the other three factors, the likelihood that Kuflom would succeed on the merits should have been decisively weighed in favor of granting a stay. In requesting the stay, Kuflom's attorney presented evidence that one of the tickets showed an unknown badge number for the officer who had issued it. (The notice of the infraction hearing had shown a badge number with the annotation "no such

---

4. 18 DCMR § 1004.1 (1987) provides:

A person has a right to a hearing whenever he or she has been aggrieved or adversely affected by any act or refusal to act, or the issuance of any order or decision by the Department

which is subject to review by any applicable statute, or which constitutes a "contested case" as this term is defined in the Administrative Procedure Act.

badge.") The issuing officer was required to appear at the infraction hearing because Kuflom had denied the charge. D.C.Code § 40–616(c). It was virtually certain, therefore, that no officer would appear at the hearing and that the ticket, accordingly, would be dismissed.[5] Consequently, even if Kuflom were to lose at each of the other five infraction hearings, he at most could receive ten points on his record for the six tickets that had caused issuance of the notice of proposed revocation. Ten points, while sufficient to justify suspension, does not justify revocation of an operator's permit. 18 DCMR § 303.3.[6] Kuflom, therefore, demonstrated much more than substantial likelihood of success at a scheduled infraction hearing; indeed, that hearing conclusively would have undermined the announced 12–point basis for revocation.

The hearing examiner did not explicitly rule on the motion for a stay, but by proceeding with the hearing and granting the revocation, he effectively denied the motion. In response to the proffered defect in the one ticket, the hearing examiner inquired about two tickets, in addition to the six, that Kuflom had received for moving violations. Apparently, the examiner was thinking that, if points had been assessed for those tickets, that would more than nullify the impact of the defective ticket on the revocation decision, assuming revocation was to be founded upon the 12–point

minimum presented by 18 DCMR § 303.3. At the time of the revocation hearing, however, counsel demonstrated that points had not been assessed for either of these tickets. Kuflom had denied one of them and was scheduled to attend an infraction hearing on it. The other ticket alleged operating after suspension. A conviction of this infraction alone would justify entry of twelve points on Kuflom's traffic record, *id.* § 303.1(k), but that matter, too, was apparently pending, and counsel represented that he believed he could clear it up promptly. The hearing examiner agreed to "hold [his] decision in abeyance pending receipt of a favorable disposition of the current operating-after-suspension," and to consider issuing Kuflom an occupational license if he obtained a favorable disposition.[7] Accordingly, the examiner did not rely on either of these other two tickets in revoking Kuflom's operator's permit for "12 points."

Kuflom's request for a stay of revocation because of an ostensible ten, not twelve, possible points would have lacked force if the hearing examiner had considered revoking Kuflom's license on the basis of 18 DCMR § 302.6,[8] or § 302.8,[9] which authorize revocations for a "frequency" or "pattern" of offenses, respectively. But those regulatory grounds were not considered. Thus, based on the only revocation issue

5. Counsel for Kuflom represented at oral argument on appeal, without contradiction by counsel for the government, that as a practical matter, if the issuing officer does not appear at the hearing, the charges stated on the ticket are dismissed. Dismissal of two of Kuflom's six tickets on March 18 and 20, 1987, because the issuing officers failed to appear tends to confirm this statement.

6. 18 DCMR § 303.3 (1987) provides:
In the event the number of points accumulated by any person reaches a total of eight (8) points, the Director may order suspension of his or her license and when a total of twelve (12) points has been accumulated, the Director may order revocation of the license.

7. 18 DCMR § 310.7(c) forbids granting occupational licenses to "[a]pplicants whose license are revoked as a result of a conviction for operating after suspension or revocation." Thus, the hearing examiner's issuance of an occupational li-

cense to Kuflom further confirms that the examiner had not relied on the ticket for operating after suspension to revoke Kuflom's license.

8. 18 DCMR § 302.6 provides:
Having been convicted or found civilly liable with such frequency of offenses against traffic regulations of the District of Columbia and elsewhere as to indicate a disrespect for traffic laws and a disregard for the safety of other persons or property, such fact being established by the point system described in section 303 of this chapter, is grounds for suspension or revocation.

9. 18 DCMR § 302.8 provides:
Having been convicted or found civilly liable for a pattern of traffic offenses or infractions over a one (1) year period which indicates a disregard for the safety of other persons or property is grounds for suspension or revocation.

before the examiner—twelve points—Kuflom demonstrated not merely substantially but virtually conclusively that the infraction hearings would yield, at most, ten points. It follows that the revocation, absent a stay pending the infraction hearings, was an abuse of discretion.

## III.

Accordingly, we must reverse the revocation of Kuflom's operator's permit and remand to BMVS with instructions to delete all references to that revocation in any record of Kuflom's driving history.[10]

*So ordered.*

TERRY, Associate Judge, concurring:

I join my colleagues in their decision to reverse and remand, and I am in general agreement with Judge Ferren's opinion for the court. However, I think Judge Ferren is too gentle with the Bureau of Traffic Adjudication in part II-B of his opinion.

I am not content with merely stating that there is "no express authority," *ante* at 343, for BTA to hold a hearing on a traffic ticket after the recipient of the ticket has admitted criminal liability by paying the fine. In my view, the absence of any statutory or regulatory authority for such hearings requires us to hold affirmatively that they are unauthorized, and hence unlawful. The fact that they have apparently been going on for years does not legitimize them; on the contrary, it demonstrates that BTA either does not know the limits of its own powers or does not care about the legality of its actions. To put it bluntly, such hearings should not be held at all without express statutory authorization. If they are still going on, they should stop.

Nevertheless, on the facts of this case, I agree that Mr. Kuflom is entitled to the

10. Under ordinary circumstances, we would reverse denial of the stay and simply remand for further proceedings. *Stamenich v. Markovic,* 462 A.2d 452, 457 n. 10 (D.C.1983). To grant a stay now, however, long after revocation was imposed and terminated, would be elevating form over substance. In reversing Kuflom's revocation for failure to grant a stay, however, we do not, of course, rule on whether the hearing examiner would have abused his discretion

relief he seeks. Once BTA agreed to hold the infraction hearings—notwithstanding its lack of authority to hold such hearings in the first place—due process required that he be given all the procedural protections to which he was entitled. In this case that means he was entitled to the stay which he sought. The hearing examiner's refusal to grant that stay requires us, for the reasons stated in Judge Ferren's opinion, *ante* at 344-45 to reverse the order revoking Mr. Kuflom's permit.

in refusing a stay on this record had a lesser sanction, such as a suspension, been sought pending the infraction hearings.