Donald KOVACH, Appellant,

v.

DISTRICT OF COLUMBIA,

and

Lockheed Martin, Inc., Appellees.

No. 01–CV–220.

District of Columbia Court of Appeals.

Argued Jan. 15, 2002.

Decided Aug. 29, 2002.

Daniel M. Wemhoff for appellant.

Carl J. Schifferle, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel at the time the brief was filed, Charles L. Reischel, Deputy Corporation Counsel, and Edward E. Schwab, Assistant Corporation Counsel, were on the brief for appellee the District of Columbia.

Frederick D. Cooke, Jr., Washington, for appellee Lockheed Martin, Inc.

Before WAGNER, Chief Judge, and TERRY and RUIZ, Associate Judges.

RUIZ, Associate Judge:

Donald Kovach appeals the trial court's grant of judgment under Super. Ct. Civ. R. 12(b)(6), on *res judicata* grounds, to the District of Columbia and Lockheed Martin, Inc. He contends that the trial court erred in ruling that his previous payment of a traffic violation, recorded by an automatic camera at a stoplight, precluded him from contesting the District's subsequent decision to forgive only unpaid fines for violations recorded by this camera. Although we disagree that *res judicata* bars his claim, we affirm the trial court's judgment based on principles of collateral estoppel which preclude appellant from alleging facts necessary to state a claim.

## I.

According to the complaint, this action arose "out of the installation of an automatic red light camera designed to catch motorists advancing through the intersection of the H Street N.E. bridge and a private lot near the vicinity of North Capitol Street." The camera was installed by Lockheed in August of 1999 at the authorization of the District government. In mid-May of 2000, the Metropolitan Police Department decided to remove the camera because it was observing an inordinate number of people running the light, which was confusing to motorists.[1] Approxi-

---

1. The complaint alleges that the H Street bridge traffic light had an "incomplete cycle" whereby it would turn from a flashing yellow to a steady yellow before turning red. Motorists would approach moving west towards the H Street bridge traffic light and see a red light while the traffic light at the intersection on North Capitol Street ahead would display a green light.

mately 20,000 motorists had been issued tickets totaling $1.5 million in fines at the time the camera was removed. The District agreed to dismiss outstanding fines assessed to some three thousand motorists whose infractions were recorded by the H Street bridge camera, but determined that those who had already paid the tickets would not be reimbursed.

Appellant, who had paid the $75 fine on a traffic ticket issued for a red light violation recorded by the H Street bridge camera approximately five months before the District decided to remove the camera, filed an action in Superior Court on his own behalf and on behalf of "some 20,000 similarly situated motorists" against the District and Lockheed as its contracting agent. His complaint claimed that the District's decision to forgive some fines and enforce others of "similarly situated" motorists who were "unfairly and confusingly" entrapped by the camera was facially discriminatory under D.C.Code § 4–139 (1994), recodified at D.C.Code § 5–133.11 (2001),[2] and violated the Fifth and Fourteenth Amendments of the Constitution. According to the complaint, Lockheed "failed to notify the District in a timely manner that it was collecting windfall fines at the intersection in question and instead awaited unfavorable news reporting causing the District to dismantle the unfair camera." Finally, the complaint alleged that the District and Lockheed were grossly negligent in failing to conduct ongoing studies to prevent the confusion that resulted from the H Street bridge light. Appellant sought the return of approximately $1.5 million in paid fines, including costs and interest, in addition to attorney's fees and costs associated with the lawsuit.

The District and Lockheed filed motions to dismiss the complaint on the grounds that it failed to state a claim for which relief could be granted because it was barred by the doctrine of *res judicata* and failed to state a class action claim. The trial court ruled that because payment of the fine constituted an adjudication on the merits that conclusively resolved the issue of appellant's liability for the ticket, *res judicata* applied, and granted appellees' motions to dismiss.[3]

## II.

Our review of the grant of judgment of dismissal for failure to state a claim under Super. Ct. Civ. R. 12(b)(6) is *de novo. See Osei–Kuffnor v. Argana,* 618 A.2d 712, 713 (1993). "Under the doctrine of res judicata, *i.e.,* claim preclusion, 'a final judgment on the merits ... precludes relitigation in a subsequent proceeding of all issues arising out of the same cause of action between the same parties or their privies, whether or not the issues were raised in the first proceeding.'" *McManus v. MCI Communications Corp.,* 748 A.2d 949, 959 (D.C.2000) (quoting *Carr v. Rose,* 701 A.2d 1065, 1070 (D.C.1997)). *Res judicata* applies in administrative cases "when the agency is acting in a judicial capacity, resolving disputed issues of fact properly before it which the parties have an adequate opportunity to litigate." *Oubre v. District of Columbia Dep't of Employment Servs.,* 630 A.2d 699, 703 (D.C.1993) (citation omitted). "The threshold inquiry is whether the earlier proceeding is the essential equivalent of a judicial proceeding." *Id.* (quoting *William*

2. D.C.Code § 5–133.11 provides that "[t]he said Mayor of the District of Columbia shall not enforce any law or ordinance discriminating between persons in the administration of justice."

3. Additionally, the court observed that there were problems with appellant's motion for class certification because of the "variety of fact patterns for all other drivers." There is no issue of class certification before us.

*J. Davis, Inc. v. Young,* 412 A.2d 1187, 1194 (D.C.1980)).

■ Under the Traffic Adjudication Act, *see* D.C.Code § 50–2301.01 *et. seq.* (2001), an individual who receives notice of an infraction may "(1) [a]dmit by payment of the civil fine, the commission of the infraction; or (2)[d]eny the commission of the infraction." D.C.Code § 50–2302.05(a). Those who wish to contest a notice of infraction may do so before a hearing examiner of the Bureau of Traffic Adjudication ("BTA"), where the District must establish the violation by "clear and convincing evidence." D.C.Code § 50–2302.06(a). An appeal from an adverse decision by the examiner may be made to an Appeals Board, *see* D.C.Code § 50–2304.02, and ultimately to the Superior Court, *see* D.C.Code § 50–2304.05. Thus, the nature of BTA proceedings for traffic and motor vehicle violations supports application of principles of *res judicata. See Oubre,* 630 A.2d at 703.

■ Under the doctrine of *res judicata,* a final judgment on the merits precludes relitigation between the same parties concerning the same factual transaction "not only as to every ground of recovery or defense actually presented in the action, but also as to every ground which might have been presented." *Carr,* 701 A.2d at 1070 (quoting *Molovinsky v. Monterey Coop.,* 689 A.2d 531, 533 (D.C.1997)). The arguments in appellant's complaint—statutory and constitutional challenges to the District's decision to forgive outstanding tickets but to refuse to refund those already paid—are distinct from the prior proceeding before the BTA which determined appellant's liability for the traffic violation,[4] and were not based on the Traffic Adjudication Act, the statutory scheme within the BTA's competence. Moreover, the challenged decision occurred five months after the BTA's adjudication and could not possibly have been raised before the BTA at the time when it adjudicated appellant's traffic ticket. Thus, *res judicata* does not bar appellant's claims.

■ For similar reasons, we also reject the argument that appellant's failure to exhaust administrative remedies prevents him from bringing this suit. Where a statute provides an administrative forum to resolve disputes, the prescribed administrative remedy must be exhausted before judicial relief may be sought. *See District of Columbia v. Group Ins. Admin.,* 633 A.2d 2, 20 (D.C.1993). The BTA, however, provides a forum for the adjudication of motor vehicle and traffic violations, and not challenges to the District's discretionary policy decisions. Thus, appellant was not required to first challenge the District's determination before the agency. In the present case, the Superior Court was the proper forum for appellant's statutory and constitutional claims.

■ While *res judicata* did not bar appellant's claim in Superior Court, we nonetheless affirm the trial court's dismissal because, given his admission of liability, collateral estoppel precludes appellant from challenging the District's decision as discriminatory as applied to him. *See Patton v. Klein,* 746 A.2d 866, 870 (D.C.1999) ("Even where *res judica-*

---

4. Lockheed asserted in its motion to dismiss that appellant had "totally and completely failed to state a claim for which relief can be granted with respect to Lockheed," given that no allegations existed that it compelled or caused the District's decision. In response, appellant argued that he could demonstrate that Lockheed was an "indispensable party" whose joinder was necessary under Super. Ct. Civ. R. 19. Assuming, *arguendo,* that this is true, in light of our disposition we need not consider Lockheed's alternative argument for dismissal.

*ta* is inapplicable, collateral estoppel may bar relitigation of the issues determined in a prior action.") Collateral estoppel "restricts a party in certain circumstances from relitigating issues or facts actually litigated and necessarily decided in an earlier proceeding." *Ringgold v. District of Columbia Dep't of Employment Servs.*, 531 A.2d 241, 243 n. 3 (D.C. 1987) (citing *Montana v. United States*, 440 U.S. 147, 153, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979), and RESTATEMENT (SECOND) OF JUDGMENTS § 27). This principle "applies not only to judicial adjudications, but also to determinations made by agencies other than courts, when such agencies are acting in a judicial capacity." *Hogue v. Hopper*, 728 A.2d 611, 614 (D.C.1999).

■■■ As already noted, the Traffic Adjudication Act provided appellant with the opportunity to challenge the $75 fine before the BTA in a proceeding that was in the nature of a judicial proceeding. Specifically, he had the opportunity to contest the notice of infraction by introducing evidence and appearing before a hearing examiner, who must decide the issue by clear and convincing evidence. *See* D.C.Code

§ 50–2302.06. He chose not to do so. In failing to contest the infraction, appellant effectively acknowledged liability for running the red light. We are not persuaded by appellant's contention that he did not receive actual notice from the face of the citation he received that payment of the ticket was an admission of liability.[5] Even if appellant was confused, his "subjective state of mind when he paid the fines … cannot determine the legal effect of payment when that effect has been prescribed by statute and regulations and has been well publicized." *Kuflom v. District of Columbia Bureau of Motor Vehicle Servs.*, 543 A.2d 340, 343 (D.C.1988).[6] Under the Traffic Adjudication Act, "[p]ayment of the fine for the infraction shall be deemed a finding of liability." D.C.Code § 50–2302.05(c)(1). The adjudication of appellant's liability collaterally estops him from now asserting that he is part of a class of people who were confused by the stoplight's placement—a necessary and essential part of his claim that the District's decision to forgive some fines was arbitrary and capricious under both District of Columbia law and the Constitution.[7] By admitting liability, appellant has taken

---

5. The ticket stated in bold, large type: "Failure to remit payment or request a hearing within 15 calendar days is an admission of liability and will result in additional penalties and a default judgment. You will lose your right to a hearing." Appellant's argument is that because the ticket did not expressly state that payment of the fine was an admission of liability, he was not given notice of the legal effect of his payment. We think appellant's reading is strained, to say the least.

6. Relying on the proposition that payment by mail of a traffic violation is ordinarily inadmissible as a matter of law, *see Johnson v. Leuthongchak*, 772 A.2d 249 (D.C.2001), appellant claims "payment of a traffic fine does not reach the level of an admission of guilt." However, as the District notes, we have recognized that the effect of payment " 'within the framework of the administration of the

traffic laws' [is] a distinct question from that of its admissibility in tort litigation." *Id.* at 250 n. 5 (quoting *Morris v. Rasque*, 591 A.2d 459, 461 (D.C.1991)). The fact that evidence of appellant's payment would be inadmissible in a tort action against him based on the traffic violation does not allow him to disavow his admission of liability where the administrative adjudication of his traffic violation is directly at issue in this case.

7. Appellant does not allege that this case involves a suspect classification or a fundamental right, and frames the issues as whether the District has acted arbitrarily and whether there is a "rational relationship to a legitimate government purpose." There is nothing irrational about the District's decision not to refund fines to persons who have admitted liability.

himself out of the class of persons he claims have been unfairly prejudiced by the District's decision.

■ We also reject appellant's argument that equitable relief should be granted here on the ground that District officials later acknowledged the potentially unfair and confusing placement of the stoplight at issue. We have recognized—at least in the workers' compensation context—that there are "circumstances where the policies underlying res judicata and collateral estoppel may be overcome," including where there has been "manifest error" in the record of a prior proceeding or if "manifest injustice" would result. *Oubre*, 630 A.2d at 703–704. Appellant, however, has no standing to challenge the decision unless there was some unfairness to *his* having to pay the fine because *he* was confused and "entrapped" by the placement of the traffic light. Appellant's claim in the present complaint that he was confused comes too late. Although the policy the District announced when it removed the camera from the H Street location occurred some five months after appellant paid the fine, the factual basis for the District's decision—that the stoplight was confusing to motorists—was available to appellant when he received his ticket. Appellant could then have challenged the placement of the stoplight as confusing or unfair before a hearing examiner, but instead chose to pay the fine for reasons of convenience. The District's subsequent removal of the camera does not negate appellant's earlier admission of liability, where appellant did not timely claim that he was confused or that the camera was somehow malfunctioning or defective. Thus, even assuming that the exceptions recognized in *Oubre* apply here,[8] appellant's payment of the fine and failure to raise any previous challenge to the issued ticket leads us to conclude that there is no "manifest error" in the prior proceeding; nor is there "manifest injustice" which calls for an exception to the collateral estoppel doctrine where the relief appellant requests for himself is the return of the $75 fine he chose to pay.[9] Thus, because principles of collateral estoppel preclude appellant from alleging a fact necessary to stating a claim, the trial court correctly granted appellees' motions to dismiss.[10]

*Affirmed.*

---

**8.** In *Walden v. District of Columbia Dep't of Employment Servs.*, 759 A.2d 186, 190 n. 4 (D.C.2000), we noted that the application of *res judicata* exceptions discussed in *Oubre* was based "to a considerable extent" on the principle that the Workers' Compensation Act is to be construed liberally, and left open the question of whether these exceptions would apply to other administrative proceedings outside of the workers' compensation context. Because appellant's claims would fail in this case even assuming the exceptions apply, we similarly decline to decide whether collateral estoppel resulting from other types of administrative proceedings may be overcome by equitable considerations.

**9.** Although appellant filed the lawsuit as a class action, the class was not certified and we view his claim as an individual one.

**10.** Analogizing to criminal law, appellant also claims that the "unfair circumstances" here should preclude application of *res judicata* because he was "entrapped" into making an admission of guilt by paying the fine. This argument, which was also readily available to appellant before the BTA, does not constitute a circumstance which would justify setting aside collateral estoppel principles in this case.