Gerald J. GILLES, Appellant,

v.

Clifton WARE, Appellee.

No. 89–CV–1436.

District of Columbia Court of Appeals.

Argued March 26, 1991.
Decided Oct. 6, 1992.

**534**

Edward F. Kearney, Washington, D.C., for appellant.

Susan S. McDonald, Asst. Corp. Counsel, with whom Herbert O. Reid, Sr., Corp. Counsel at the time of filing, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., were on the brief for appellee.

Before FERREN and WAGNER, Associate Judges, and REILLY, Senior Judge.

**PER CURIAM:**

The judgment of the Superior Court is affirmed based on the analysis in Parts II.–III. of Judge FERREN'S opinion, which Judge WAGNER joins and, further, based on the result reached by Judge WAGNER and Judge REILLY for different reasons, as indicated in their separate opinions.

FERREN, Associate Judge, concurring in part and dissenting in part:

For the reasons that follow, in particular in Part IV., I would reverse the grant of summary judgment and remand the case for trial.

I.

A.

Appellant Gilles appeals from a summary judgment rejecting his constitutional, civil rights, and negligence claims on the ground that they were barred by the doctrine of *res judicata* (claim preclusion). Appellant's suit arose out of appellee Ware's allegedly negligent placement of 44 points on appellant's driver's record, resulting in the wrongful suspension of his license and his ultimate loss of livelihood as a taxicab driver. The issues on appeal are (1) whether the trial court had jurisdiction to decide the preclusion issue when appellant failed to pursue an administrative remedy for his license revocation; (2) if there was jurisdiction, whether *res judicata* precluded appellant from pursuing his negligence claim in "state" court [1] after dismissal on the merits of his constitutional and civil rights claims in federal court, when appellant had not joined his negligence claim as an alternative theory of recovery in the federal action, invoking the court's discretionary exercise of pendent jurisdiction; (3) even if *res judicata* ordinarily would apply because of a failure to invoke the federal court's pendent jurisdiction, whether *res judicata* does not apply when the federal claim is summarily dismissed before trial and, as a consequence, the federal court presumably would have declined to exercise its pendent jurisdiction; and (4) in any event, whether appellee Ware waived the right to invoke *res judicata* by either expressly consenting to, or at least implicitly acquiescing in, appellant's deci-

---

1. When using the terms "state" court or "state" law in this opinion, we are referring, of course, to the Superior Court of the District of Columbia or to the District of Columbia Code.

sion to prosecute his federal and state claims separately.

I conclude, and Judge WAGNER concurs, that (1) the trial court had jurisdiction over the negligence claim because appellant was not required to exhaust administrative remedies; (2) appellant improperly split his cause of action because the negligence claim arose out of the same factual transaction that gave rise to the federal lawsuit, and the federal court could have exercised pendent jurisdiction over the state (negligence) claim; and (3) ordinarily, under these circumstances, *res judicata* would bar the Superior Court lawsuit, unless the defendant has waived the benefit of the rule against claim-splitting either explicitly or implicitly.

More specifically, Judge WAGNER and I in the majority agree on two significant issues. First, to avoid problems inherent in "claim-splitting," a party who files a claim in federal court should invoke that court's pendent jurisdiction and join in the federal complaint all theories of relief under state law arising out of the same transaction. Second, a litigant who fails to do so and later attempts to bring the state claim in state court will find the state claims barred by *res judicata* unless (A) the federal court has clearly indicated it would not have exercised its pendent jurisdiction, or (B) the party seeking to rely on *res judicata* has waived it by express or implied consent.

Judge WAGNER and I part company, however, over whether appellee has stated a prima facie case supporting his motion for summary judgment based on *res judicata.* Judge WAGNER concludes that appellee has stated that prima facie case, and that appellant failed to rebut it. I conclude that appellant, in opposing summary judgment, has sufficiently met his burden of produc-

tion to rebut appellee's prima facie defense. As a consequence, I believe that appellee can be said as a matter of law to have acquiesced in appellant's claim-splitting because he failed to object when appellant dropped his tort claim from his federal complaint in order to file the present tort action in Superior Court. The judgment accordingly should be reversed and the case remanded for trial.

### B.

In April 1984, appellant, a taxi driver in the District of Columbia, received a notice from the Bureau of Motor Vehicles Services (BMVS) proposing to revoke his driver's license because his driving record showed traffic violations totalling 44 points.[2] The notice informed appellant of a hearing on the proposed revocation in three weeks. At the May 1984 hearing, appellant contended that he had not accumulated 44 points. The hearing examiner ruled against him and revoked appellant's license on the day of the hearing. Appellant did not exercise his right to appeal the examiner's decision to an Appeals Board. *See* D.C. Code §§ 40–632, –634 (1990); 18 DCMR §§ 1004.1, 3014.1, 3014.9 (1987); *Kuflom v. Bureau of Motor Vehicle Services,* 543 A.2d 340, 344 (D.C.1988). Four days after the revocation, the hearing examiner issued appellant a restricted driver's license authorizing him to operate his taxi Monday through Saturday, from 9:00 a.m. to 7:00 p.m.[3]

One year later, in May 1985, appellant's counsel wrote a letter to the Administrator of the Transportation Systems Administration asking him to review appellant's record and to overturn the revocation. In June 1985, the Administrator responded that "this revocation was issued in error

---

**2.** For a more detailed account of the facts, see *Gilles v. Touchstone,* 676 F.Supp. 341, 342–43 (D.D.C.1987).

**3.** Appellant also appeared in separate proceedings during this period before the Hacker's License Appeal Board to address complaints passengers had filed against him. In August 1984, after several hearings and an appeal to this court, *Gilles v. Hacker's Appeals Commission,* No. 84–647 (June 29, 1984), the Hacker's Board

revoked appellant's hacker's identification card for nine months. *See Gilles,* 676 F.Supp. at 343. Appellant contends that the erroneous placement of the 44 points on his driver's license and the resulting revocation of his license contributed to the Hacker's Board decision to revoke his hacker's identification card. This, he says, deprived him of his livelihood and ultimately resulted in the March 1985 denial of his application for United States citizenship.

since points are not assessed until a moving traffic infraction is adjudicated. Your client should have been suspended at that time for unsatisfied traffic infractions...." He voided the revocation and issued a Notice of Proposed Suspension. By August 1985, the 44 points had been removed from appellant's driving record.

On July 9, 1985, appellant filed suit in United States District Court for the District of Columbia against a number of District officials (the "District defendants") alleging that their inaccurate maintenance of his driver's license record had violated his constitutional rights and constituted libel, intentional infliction of emotional distress, and negligence. He demanded $4.5 million in damages. Appellant's pleading recognized that the federal court had "pendent jurisdiction to consider other claims which arise out of the same set of facts as the federal claims." In December 1985, however, appellant filed an amended complaint alleging only the constitutional due process claim and dropping all state law claims. By August 1987, all defendants had been dismissed except Clifton Ware, a BMVS supervisor responsible for physically entering the incorrect points onto appellant's driver's record. On November 12, 1987, the federal court granted the District's motion for summary judgment, concluding from the motions, the stipulated facts, and other materials of record that there was no genuine triable issue of material fact. *See Gilles v. Touchstone,* 676 F.Supp. 341, 346 (D.D.C.1987).

Meanwhile, on April 27, 1987, appellant had filed suit in Superior Court alleging that Clifton Ware had "negligently or in violation of [appellant's] constitutional and civil rights placed points on [appellant's] Driver's Record.... As a result, [appellant] was denied his employment as a taxicab driver and was refused citizenship."[4] Appellant demanded $4.5 million in damages. Within the month, appellee Ware filed a motion requesting a stay of these proceedings pending the outcome of the federal lawsuit. The stay was granted.

Two years later, after the stay had been lifted, appellee filed his answer, asserting that the state claim was barred by the federal court judgment and citing *Gilles v. Touchstone.* Six months later, on November 17, 1989, the Superior Court granted appellee's motion for summary judgment, ruling that "plaintiff's action is precluded by the prior federal court judgment on the same cause of action."

## II.

■ Appellee Ware argues for the first time on appeal, and Judge REILLY agrees, that appellant's failure to appeal the suspension of his driver's license to the Department of Transportation Appeals Board, *see* D.C. Code § 40–631 (1990), barred his negligence claim in court under the doctrine requiring exhaustion of administrative remedies. Accordingly, appellee contends, we should sustain the trial court's dismissal of appellant's claim on the ground that the trial court lacked jurisdiction over the negligence claim. It would follow that we need not—and should not—reach the issue of *res judicata.* We agree that if the exhaustion of administrative remedies doctrine were to apply to appellant's negligence claim, the trial court would not have jurisdiction. *See* D.C. Code §§ 1–1510 (1987), 40–635 (1990). The exhaustion doctrine, however, does not apply here.

Judge REILLY reasons that one "who suffers harm by his own failure to appeal a decision he could have challenged—and arguably prevented—has no standing to recover damages in a trial court for the collateral consequences of not availing himself of his legal rights." *Post* at 555. The issue of who caused appellant's damages, however, is distinct from the issue of the Superior Court's subject matter jurisdiction to hear the case. It may very well be that appellant's failure to pursue an administrative remedy at the time his license was suspended was a "but for" cause of the damages he alleges. *See, e.g., McCord v. Green,* 362 A.2d 720, 725–26 (D.C.1976)

---

4. Appellant did not include the claims for libel and intentional infliction of emotional distress

which he had filed in his original federal court complaint.

(discussing doctrine of avoidable consequences). The factual cause of appellant's damages, however, is not relevant to the legal question of the Superior Court's jurisdiction to hear a negligence action for a tort remedy.[5]

Appellant has filed a complaint in Superior Court for damages arising from appellee's negligent acts—a claim over which the Appeals Board would not have had jurisdiction. More specifically, appellant has not asked for the type of relief that is within the Appeals Board's jurisdiction to grant; for example, to remove the 44 points from his driving record, reinstate his license, or set aside any monetary penalties. *See* D.C. Code § 40–632 (1990). The statute authorizing the Appeals Board only permits that Board to review decisions of the hearing examiner and to consider the established record; it does not allow the Board to hear claims of agency negligence or to award damages caused by agency error. *See* D.C. Code § 40–633 (1990);[6] 18 DCMR § 3014.4 (1987).[7] We conclude, accordingly, that there was no administrative remedy for appellant to exhaust before filing his claim for money damages against appellee. *See Goode v. Antioch University*, 544 A.2d 704, 706 n. 5 (D.C.1988) (no exhaustion requirement when appellant could not receive money damages in administrative appeal).[8] The proper District of Columbia forum for initially filing appellant's negligence action initially was the Superior Court. *Cf. Miller v. District of Columbia*, 587 A.2d 213, 216 (D.C.1991) (" '[T]he dominant characteristic' of § 1983 actions is that *'they belong in court'* and that such causes of action 'exist independent of any other legal or administrative relief that may be available as a matter of ... law. They are judicially enforceable *in the first instance.*' " (citation omitted, emphasis in original) (quoting *Felder v. Casey*, 487 U.S. 131, 148, 108 S.Ct. 2302, 2312, 101 L.Ed.2d 123 (1988))).

Although appellant's possible failure to mitigate damages may reduce any dollar amount he is entitled to recover, this has nothing to do with the antecedent question of jurisdiction. The issue of causation and damages should be left to the trier of fact.[9]

---

**5.** It is for the parties to argue, and the factfinder to find, the proximate cause of appellant's damages, if any. We note in passing that, although appellant had a right to appeal the suspension of his license to the Appeals Board, it was not a duty. His failure to pursue that right does not necessarily relieve appellee from responsibility for any damage his admitted negligence caused or from any duty to find and correct his own errors.

Appellant's damages may have been mitigated when the examiner later issued him a restricted license, and the damages might have been further mitigated if appellant had appealed and the Appeals Board had restored his license earlier than otherwise occurred. But even if the Appeals Board had restored appellant's driver's license, he might not have been made whole if money damages accrued during the date between license revocation and restoration. The parties, of course, would have an opportunity to argue these issues at trial—issues on which we express no opinion—if the summary judgment were overturned.

**6.** D.C.Code § 40–633 (1990) reads in part:
Each appeal board shall review each case before it on the record and shall hold unlawful and set aside any action or findings or conclusions found to be:

(1) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law;

\*   \*   \*   \*   \*   \*

(5) Unsupported by substantial evidence in the record of the proceedings before the appeals board.

**7.** 18 DCMR § 3014.4 (1987) reads:
The Appeals Board shall have the power to reverse, remand, or modify any decision of a hearing examiner.

**8.** We also note it is well settled that "no requirement of exhaustion exists if the attempt to exhaust would be futile." *Apartment & Office Bldg. Ass'n*, 343 A.2d 323, 332 (citing *Smith v. Illinois Bell Telephone Co.*, 270 U.S. 587, 591, 46 S.Ct. 408, 410, 70 L.Ed. 747 (1926)). Any attempt by appellant to bring his negligence claim before the Appeals Board could not have been heard by the Board and would, therefore, have been futile.

**9.** Because Judge REILLY premises his jurisdictional argument on appellant's failure to take an administrative appeal of his license revocation, we feel compelled to address his argument relating to this assumed opportunity to mitigate his damages. Judge REILLY reasons that in the event appellant administratively appealed his license revocation and the Appeals Board failed *to restore appellant's license, "he could have*

In short, because the Appeals Board did not have jurisdiction to provide the tort remedy appellant now seeks, the exhaustion doctrine is not applicable, and the Superior Court has jurisdiction to hear appellant's claim.

### III.

Appellant filed separate actions, reflecting different legal theories, in the federal District Court and in the District of Columbia Superior Court. Both complaints, however, concerned the same transaction: Ware's erroneous assignment of 44 points on appellant's driver's record between April and May 1984, allegedly causing appellant to lose his employment as a taxicab driver and his opportunity for United States citizenship. *See supra* note 3. Each complaint also requested the same relief: $4.5 million in damages and such equitable relief as the court deemed appropriate. The only significant differences between the complaints were their theories of recovery: constitutional and civil rights claims in the amended federal complaint, and negligence, constitutional, and civil rights claims in the Superior court complaint. Appellant, moreover, had the opportunity to allege the state (negligence) claim in his federal complaint by asking the court to exercise pendent jurisdiction. In fact, appellant did so in his initial federal complaint but withdrew the pendent claims in filing his amended federal complaint. The question presented, therefore, is whether appellant's failure to pursue a state claim in federal court—and the resulting split of his cause of action between the federal and state forums—now forecloses a second, state proceeding because the federal court has rendered a final disposition. *See Smith v. Jenkins,* 562 A.2d 610, 614 (D.C.1989).

■ After a valid final judgment on the merits of a judicial proceeding, the doctrine of *res judicata* (claim preclusion) absolutely bars the same parties from relitigating the same claim (and, generally, any claim that should have been raised) in a subsequent lawsuit. *See United States v. Int'l Bldg. Co.,* 345 U.S. 502, 504, 73 S.Ct. 807, 808, 97 L.Ed. 1182, *reh'g denied,* 345 U.S. 978, 73 S.Ct. 1120, 97 L.Ed. 1392 (1953); *Washington Medical Center, Inc. v. Holle,* 573 A.2d 1269, 1280–81 (D.C.1990); *Henderson v. Snider Bros., Inc.,* 439 A.2d 481, 485 (D.C.1981) (en banc). This doctrine generally extends to dismissals, to summary judgments, and to judgments upon a verdict after trial. *See* Super.Ct.Civ.R. 41(b) (unless court specifies otherwise, dismissal operates as adjudication on the merits unless dismissal occurs for lack of jurisdiction or failure to join a party under Rule 19); *Stutsman v. Kaiser*

obtained judicial redress by filing a petition for review [in the Court of Appeals] pursuant to D.C.Code § 1–1510, accompanied by a motion to stay the agency order. *See Kuflom v. District of Columbia Motor Vehicle Services,* 543 A.2d 340, 342, 343–46 (D.C.1988)." *Post* at 47. This approach requires undue speculation.

Judge REILLY appears to argue that appellee should be relieved from his admitted negligence because appellant should have known he had a right to appeal the revocation of his license and to move for a stay of that revocation. But even if appellant had filed an administrative appeal and asked the Appeals Board for a stay pending appeal, it would have been difficult, if not impossible, to have caused the Board to reopen his official driving record. The Board's scope of review is limited to "review of each case before it *on the record."* D.C.Code § 40–633, *supra* note 6 (emphasis added). The regulations permit enhancement of this record by official notice of BMVS files, *see* 18 DCMR § 1035.1–.2, but it is problematic at best to assume that appellant, without formal discovery and within

the required 15 days from the date of the hearing examiner's revocation decision, *id.* at § 1042.1, could have directed the Appeals Board to documents that would have permitted timely official notice of the mistake that gave rise to his license revocation. In fact, it is unclear to what extent appellant had access to his official driving record at his initial hearing. In *Carpenter v. D.C. Traffic Adjudication Appeal Board,* 530 A.2d 680 (D.C.1987), we noted that the hearing examiner only had access to a computerized printout of Carpenter's traffic offenses and that the "computer printout relied on by the hearing examiner was not offered in evidence at the hearing nor shown to petitioner at that time...." *Id.* at 681. Under such circumstances—presumably true for this case—it is not clear how, in moving for a stay from the Appeals Board and, if necessary, from this court, *see* D.C.Code §§ 40–635 (1990), 1–1510 (1987); 18 DCMR § 1042.3, appellant could have effectively challenged the accuracy of his official driving record and thus saved himself from damages caused by appellee's negligence.

*Found. Health Plan,* 546 A.2d 367, 370 (D.C.1988) (judgment in favor of plaintiff after jury verdict in survival/loss of consortium action precluded later wrongful death action based on same facts); *Scholl v. Tibbs,* 36 A.2d 352, 353 (D.C.1944) (judgment of landlord and tenant court for tenant after hearing, but without formal trial, was *res judicata* in subsequent action for same relief); *Prakash v. American University,* 234 U.S.App.D.C. 75, 82–83, 727 F.2d 1174, 1181–82 (1984) (summary judgment is ruling on merits and bars subsequent action); 10 C. WRIGHT, A. MILLER AND M. KANE, FEDERAL PROCEDURE AND PRACTICE § 2712 at 584–85, § 2713 at 612 (1983) (same); RESTATEMENT (SECOND) OF JUDGMENTS § 19 comment g (1982) (same).[10]

■ A final judgment on the merits "embodies all of a party's rights arising out of the transaction involved, and a party will be foreclosed from later seeking relief on the basis of issues which *might have been raised* in the prior action." *Stutsman,* 546 A.2d at 370 (emphasis added); *see Commissioner v. Sunnen,* 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948). The doctrine generally operates to prevent a party from splitting a single transaction into its several theories of recovery and "holding one in reserve while he [or she] presses another to judgment." *Stutsman,* 546 A.2d at 371 n. 7, (quoting *Brotherhood of R.R. Trainmen v. Atlantic Coast Line R.R. Co.,* 127 U.S.App.D.C. 298, 300, 383 F.2d 225, 227 (1967), *cert. denied,* 389 U.S. 1047, 88 S.Ct. 790, 19 L.Ed.2d 839 (1968)). A party who fails to succeed on one theory of recovery may not frustrate the doctrine of *res judicata* by cloaking the same cause of action in the language of another theory in a subsequent proceeding. *See* RESTATEMENT (SECOND) OF JUDGMENTS §§ 17, 23, and 24 (1982). As the Restatement notes, however, claim preclusion is not only based upon, but also limited by, the opportunity for a plaintiff under modern liberalized joinder rules to present all the claims in one proceeding.

*Id.* at § 25, comment f. We must therefore be alert to any limitation inherent in a federal court's pendent jurisdiction over state claims in evaluating the impact of the federal court decision on this litigation.

■ Appellant argues that because the federal court could entertain his state law claims only by exercising pendent jurisdiction, and because pendent jurisdiction is discretionary and uncertain, it is unfair to expect him to have joined his state theories of relief in the federal complaint. We cannot agree. Ordinarily, a federal court does not have jurisdiction over claims based on state law unless complete diversity of citizenship exists between the parties. *See* 28 U.S.C. § 1332 (1966); *Indianapolis v. Chase Nat'l Bank,* 314 U.S. 63, 69, 62 S.Ct. 15, 16, 86 L.Ed. 47, *reh'g denied,* 314 U.S. 714, 62 S.Ct. 355, 86 L.Ed. 569 (1941). An exception to this rule, known as pendent jurisdiction, is available when "the state and federal claims ... derive from a common nucleus of operative fact" and "[t]he federal claim [has] substance sufficient to confer subject matter jurisdiction on the court." *United Mine Workers of America v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966).

A federal court's exercise of pendent jurisdiction, however, is discretionary. It "need not be exercised in every case in which it is found to exist," *id.* at 726, 86 S.Ct. at 1139; rather, the court's decision will turn on "considerations of judicial economy, convenience and fairness to litigants." *Id.* Because a federal court should avoid "needless decisions of state law," the court ordinarily should decline to exercise pendent jurisdiction "if it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought," *id.,* or "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense." *Id.* In such a case, the federal court should dismiss the state

---

**10.** The RESTATEMENT (SECOND) OF JUDGMENTS has *eliminated the phrase "on the merits"* "because of its possibly misleading connotations" and speaks instead of "a valid and final personal judgment rendered in favor of the defendant." RESTATEMENT (SECOND) OF JUDGMENTS § 19 comment a (1982).

claims without prejudice, leaving them for resolution to the state courts. *Id.* at 727, 86 S.Ct. at 1139. On the other hand, if the state claim is "closely tied to questions of federal policy," pendent jurisdiction should be exercised. *Id.* When, "considered without regard to their federal or state character, a plaintiff's claims are such that he [or she] would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." *Id.* at 725, 86 S.Ct. at 1138.

A party cannot know for sure that a federal court will agree—or refuse—to hear pendent claims. We agree, however, with the United States Court of Appeals for the Seventh Circuit that a plaintiff in virtually every case should file all pendent claims and test the court's discretion.

> The uncertainty over whether a trial judge would exercise pendent jurisdiction does not justify permitting the institution of a multiplicity of proceedings which may have the effect of harassing defendants and wasting judicial resources. If appellant entertained *any* doubts at the *pleading* stage, they should have been resolved in favor of joinder. *See Federated Department Stores v. Moitie,* [452 U.S. 394, 404] [, 101 S.Ct. 2424, 2430, 69 L.Ed.2d 103] (1981) (Blackmun, J., concurring).

*Harper Plastics v. Amoco Chemicals Corp.,* 657 F.2d 939, 946 (7th Cir.1981) (em-

phasis added). *See also Anderson v. Phoenix Inv. Counsel of Boston, Inc.,* 387 Mass. 444, 450, 440 N.E.2d 1164, 1168–69 (1982); *Anderson v. Werner Continental, Inc.,* 363 N.W.2d 332, 335 (Minn.Ct.App. 1985); *Juneau Square Corp. v. First Wisconsin Nat'l Bank of Milwaukee,* 122 Wis.2d 673, 681, 364 N.W.2d 164, 170 (Wis. Ct.App.), *review denied,* 122 Wis.2d 782, 367 N.W.2d 222 (1985). We find the Seventh Circuit's reasoning persuasive and therefore reject appellant's argument that the mere uncertainty of a federal court's exercise of pendent jurisdiction should relieve him of his obligation to plead a state claim.

We therefore recognize the rule that, when a plaintiff has an apparent right to invoke a federal court's pendent jurisdiction over a state law claim, the plaintiff is obliged to file the pendent claim and force the federal court to exercise its discretion to keep or decline jurisdiction; otherwise, the plaintiff will confront a *res judicata* bar of the state claim in a subsequent state court proceeding. This approach is in accord with the RESTATEMENT (SECOND) OF JUDGMENTS § 25, comment e,[11] and with a substantial body of caselaw.[12] As the Reporter's Note to RESTATEMENT § 25, comment e, indicates, however, the caveat in this comment—that a second action is not precluded if the federal court in the first action would *clearly* have declined to exercise its jurisdiction over the omitted state claim—is open to varying interpretations.

---

**11.** RESTATEMENT (SECOND) OF JUDGMENTS § 25, comment e reads:

> e. *State and federal theories or grounds.* A given claim may find support in theories or grounds arising from both state and federal law. When the plaintiff brings an action on the claim in a court, either state or federal, in which there is no jurisdictional obstacle to his advancing both theories or grounds, but he presents only one of them, and judgment is entered with respect to it, he may not maintain a second action in which he tenders the other theory or ground. If however, the court in the first action would clearly not have had jurisdiction to entertain the omitted theory or ground (or, having jurisdiction, would clearly have declined to exercise it as a matter of discretion), then a second action in a competent court presenting the omitted theory or ground should be held not precluded.

**12.** *See, e.g., Woods Exploration & Producing Co. v. Aluminum Co. of America,* 438 F.2d 1286, 1314–15 (5th Cir.1971), *cert. denied,* 404 U.S. 1047, 92 S.Ct. 701, 30 L.Ed.2d 736 (1972); *Hill v. Wooten,* 247 Ga. 737, 738, 279 S.E.2d 227, 228 (1981); *Silver v. Queen's Hospital,* 63 Haw. 430, 438, 629 P.2d 1116, 1122 (1981); *Blazer Corp. v. New Jersey Sports and Exposition Auth.,* 199 N.J.Super. 107, 109, 488 A.2d 1025, 1027 (N.J.App.Div.1985); *McCann v. Whitney,* 25 N.Y.S.2d 354, 356 (Sup.Ct.1941); *Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood,* 20 Ohio App.3d 338, 341, 486 N.E.2d 194, 196 (Ct.App.1984); *Rennie v. Freeway Transport,* 294 Or. 319, 325, 656 P.2d 919, 923 (1982); *Belliston v. Texaco, Inc.,* 521 P.2d 379 (Utah 1974); *Juneau Square Corp. v. First Wisconsin Nat'l Bank, supra. See also* 18 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4412, at 95–99 (1981).

*See id.*, Reporter's Note at 228. To be sure, the caveat contains almost inherently contradictory concepts: predicting that a court will "clearly" decline to do something that is a matter of "discretion."

■ One line of cases, which appellant urges us to adopt, holds that if the federal question is decided on summary judgment, as happened in appellant's federal lawsuit, it is "clear"—or at least it should be deemed "clear"—that the federal court would not have entertained pendent jurisdiction over the state claim. Accordingly, the state claim should not be barred even if it could have been, but was not, pleaded in the federal complaint. *See Merry v. Coast Community College Dist.*, 97 Cal.App.3d 214, 227, 158 Cal.Rptr. 603, 612 (Ct.App. 1979); *Ron Tonkin Gran Turismo, Inc. v. Wakehouse Motors, Inc.*, 46 Or.App. 199, 206, 611 P.2d 658, 662 (Ct.App.1980). These courts reason that once the federal court has dismissed the federal claim, that court must decline to exercise pendent jurisdiction over a state claim. *See Duckworth v. Franzen*, 780 F.2d 645, 656 (7th Cir.1985) (pendent claim jurisdiction should normally be relinquished when federal claim is dismissed before trial), *cert. denied*, 479 U.S. 816, 107 S.Ct. 71, 93 L.Ed.2d 28 (1986). These courts, therefore, interpret the RESTATEMENT § 25, comment e caveat to mean that *res judicata* does not apply to subsequent state actions concerning the same cause of action if the federal action is decided on summary judgment, even if a pendent state claim was never filed in the federal complaint.

■ We believe this approach is unworkable because it is based on pure speculation. A federal court is not obliged automatically to dismiss a pendent state claim if it grants summary judgment on a federal claim. *See Hagans v. Lavine*, 415 U.S. 528, 539–40, 94 S.Ct. 1372, 1380, 39 L.Ed.2d 577 (1974) (equal protection claim not so frivolous or insubstantial on face of complaint that court had no jurisdiction to reach merits of state law claim before dismissing federal claim); *Florida East Coast Ry. Co. v. United States*, 519 F.2d 1184, 1194 (5th Cir.1975) ("The jurisdiction of the district court is dependent upon the substantiality of the claims stated in the complaint, not by plaintiff's ultimate right to judgment." (citing *Hagans*, 415 U.S. at 542, 94 S.Ct. at 1381)). Thus, there is no basis for a plaintiff or a state court to conclude with any reliable degree of certainty that the federal court "clearly" would have dismissed the pendent state claim once the federal complaint, although disposed of on summary judgment, had raised an issue of federal or constitutional law sufficient to invoke the jurisdiction of the federal court.

More persuasive case authority cited in the Reporter's Note interprets the caveat in RESTATEMENT § 25, comment e, to require a plaintiff to file the state claim in federal court, invoke the court's pendent jurisdiction, and thus build a record reflecting the court's exercise of discretion over pendent jurisdiction. In this way, the plaintiff can cause the federal court to make clear whether its summary judgment includes state as well as federal claims. *See McLearn v. Cowen & Co.*, 48 N.Y.2d 696, 697, 422 N.Y.S.2d 60, 61, 397 N.E.2d 750, 751 (1979). *See also Anderson*, 387 Mass. at 451, 440 N.E.2d at 1169; Annotation, *Existence of Pendent Jurisdiction of Federal Court over State Claim when Joined with Claim Arising Under Laws, Treaties, or Constitution of United States*, 75 A.L.R. FED. 600, 612–13 (1985). "[I]n case of doubt, it is appropriate for the rules of res judicata to compel the plaintiff to bring forward his [or her] state theories in the federal action, in order to make it possible to resolve the entire controversy in a single lawsuit." RESTATEMENT (SECOND) OF JUDGMENTS § 25 reporter's note at 228 (1982). A party should not be relieved of its relatively light obligation to plead the state claim merely because at some later time the federal court grants summary judgment on the federal claim. In this case, we cannot say it is clear that the federal court would have declined to exercise its pendent jurisdiction over the negligence claim; appellant's federal claim, when he filed his complaint, was not so insubstantial that the federal court "clearly" would not have taken jurisdiction. The fact that Judge Ho-

gan, in appellant's federal district court case, granted summary judgment on appellant's due process claim because of the adequacy of state administrative remedies and appellant's failure to avail himself of those remedies, *see Gilles,* 676 F.Supp. at 345, does not "clearly" mean that Judge Hogan would not have exercised jurisdiction over a pendent state claim alleging common law tort theories which—as we here hold—are not barred by failure to exhaust those administrative remedies.

If the federal district court concludes that the federal claims are without merit, as happened here, or proceeds with the federal case but concludes that the state issues predominate in the litigation, *see Gibbs,* 383 U.S. at 727, 86 S.Ct. at 1139, the federal court very likely will resolve the federal claim and dismiss the state claims without prejudice.[13] The plaintiff will then be permitted to pursue the state law claims in a separate state proceeding.[14] *Id.* "Discretionary refusal by a federal court to exercise pendent jurisdiction over a state claim does not bar further litigation of the state claim in state court." *Boccardo v. Safeway Stores, Inc.,* 134 Cal.App.3d 1037, 1046, 184 Cal.Rptr. 903, 909 (1982).[15]

The fact, however, that a federal court most likely will dismiss a state law claim— a prediction based on the results of earlier cases—is not enough to assure litigants that the court "clearly" will decline to exercise "discretionary" power to keep the case. Only when the federal court, as a matter of law, is left without discretion to keep the pendent state case will that result be "clear" within the meaning of RESTATEMENT § 25, comment e, as we interpret it. We think this bright-line rule is necessary to promote the interests of the disputing parties and the court system in judicial economy and in litigation certainty. The application of *res judicata* permits a clear and final result; the alternative, allowing a party to split state and federal claims, is based on the mere fortuity of a federal court's granting summary judgment to a defendant on a federal claim to which a pendent state claim readily could have been—but was not—added.

We therefore reject appellant's contention that he was not required to plead related state claims in his federal complaint simply because summary judgment was granted on his federal claim. The rule we adopt here requiring plaintiff to present all pendent state claims in the initial, federal action promotes fairness to litigants by

**13.** Because the statute of limitations would not be tolled during the period when the federal court had the state claim under consideration, *see Bond v. Serano,* 566 A.2d 47, 49 (D.C.1989), counsel filing pendent state claims in federal court would be well advised to file a protective lawsuit in Superior Court and to arrange for a continuance pending resolution of the federal court's ruling on pendent jurisdiction.

**14.** We do not express an opinion on the position taken by the Seventh Circuit that if a plaintiff pleads only pendent jurisdiction over the state claims in the federal complaint, but also could have asserted diversity jurisdiction, *res judicata* will bar any attempt to pursue those state claims in a state court if the federal court declines to exercise pendent jurisdiction. *Shaver v. F.W. Woolworth Co.,* 840 F.2d 1361 (7th Cir.), *cert. denied,* 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988); *see also Kale v. Combined Ins. Co. of America,* 924 F.2d 1161, 1167 (1st Cir.) (following *Shaver* ), *cert. denied,* — U.S. ——, 112 S.Ct. 69, 116 L.Ed.2d 44 (1991).

**15.** We agree with the majority rule that, when a federal court declines to exercise pendent juris-

diction over a related state claim, *res judicata* does not bar plaintiff from bringing a subsequent proceeding on that claim in state court. *See, e.g., Nilsen v. City of Moss Point,* 674 F.2d 379, 385 (5th Cir.1982); *In re General Motors Corp. Engine Interchange Litigation,* 594 F.2d 1106, 1134 (7th Cir.), *cert. denied,* 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979); *Calderone Enter. Corp. v. United Artists Theatre Circuit, Inc.,* 454 F.2d 1292, 1297 (2d Cir.1971), *cert. denied,* 406 U.S. 930, 92 S.Ct. 1776, 32 L.Ed.2d 132 (1972); *Terrell v. City of Bessemer,* 406 So.2d 337, 340 (Ala.1981); *Penn Mart Realty Co. v. Becker,* 298 A.2d 349, 352 (Del. Ch. 1972); *Ferger v. Local 483,* 97 N.J.Super. 505, 506, 235 A.2d 482, 483 (N.J.Super.App.Div.1967), *cert. denied,* 51 N.J. 181, 238 A.2d 468 (N.J.1968); *Massengill v. Scott,* 738 S.W.2d 629 (Tenn.1987). *But see Mattson v. City of Costa Mesa,* 106 Cal. App.3d 441, 454, 164 Cal.Rptr. 913, 922 (Ct.App. 1980) (if federal court declined to exercise pendent jurisdiction over state claim, and plaintiff elects to proceed to trial and judgment in federal court on federal claim, plaintiff's entire cause of action is merged in, or barred by, federal court judgment, thereby precluding successive state proceeding on same cause of action).

simplifying the rules of pleading while encouraging judicial economy by disposing of a controversy, if possible, in a single proceeding. In sum, if a plaintiff wishes to preserve a state law claim based on the same transaction that underlies a federal claim, the plaintiff must join the state claim as a count in the federal court complaint, *see* FED.R.CIV.P. Rule 18 (joinder of claims and remedies), and invoke the federal court's pendent jurisdiction.

### IV.

Alternatively, appellant argues that the trial court erred in granting appellee's motion for summary judgment because *res judicata* does not apply for another reason: appellee Ware consented, either explicitly or implicitly, to appellant's splitting his claims between the federal and state forums.

In ruling on summary judgment that *res judicata* (claim preclusion) barred appellant's lawsuit, the trial court did not address the consent to claim-splitting issue. Once, however, appellant raised the "genuine issue" of acquiescence in the trial court, *Nader v. de Toledano*, 408 A.2d 31, 48 (D.C.1979), *cert. denied*, 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980), appellee had the burden, as the moving party, to show that he had not agreed to appellant's claim-splitting. More specifically, appellee had to show that he did not consent when—in response to the District defendants' motion to dismiss appellant's tort claim in the federal lawsuit—appellant amended his District Court complaint to remove his tort claim and filed a separate tort action in Superior Court. Nonetheless, neither appellee's motion for summary judgment in the Superior Court nor the trial court's order granting that motion says anything

about the acquiescence issue, which is fundamental to the resolution of appellee's *res judicata* defense.[16]

In reviewing the propriety of the trial court's order granting summary judgment, this court must determine (1) whether there are any unresolved issues of fact relevant to the ruling and (2) whether the trial court correctly applied the law of *res judicata*. *See Davis v. Gulf Oil Corp.*, 485 A.2d 160, 164 (D.C.1984). In carrying out this task, "we must view the record in the light most favorable to [appellant,] the party who opposes summary judgment[,] and thus resolve any doubt as to the existence of a factual dispute against [appellee,] the moving party." *Id.*

Under the RESTATEMENT, *res judicata* (claim preclusion) does not apply to extinguish a claim if "[t]he parties have agreed in terms or in effect that the plaintiff may split his [or her] claim, or the defendant has acquiesced therein." RESTATEMENT (SECOND) OF JUDGMENTS § 26(1)(a) (1982); *see* 18 C. WRIGHT, A. MILLER AND E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4414 (1981); *Rennie v. Freeway Transport*, 294 Or. 319, 327, 656 P.2d 919, 924 (1982). That is because the main purpose of *res judicata* "is to protect the defendant from being harassed by repetitive actions based on the same claim. The rule is thus not applicable when the defendant consents, in express words or otherwise, to the splitting of the claim." RESTATEMENT § 26, comment a. Applying the RESTATEMENT rule, I conclude that the record on summary judgment does not establish that the District defendants expressly agreed to appellant's claim-splitting. But I also conclude that the record conclusively shows that appellee acquiesced in—*i.e.*, implicitly consented by his actions to—appellant's decision to pros-

**16.** Whether a defendant consents to claim-splitting is, in many cases, in large part a question of motive and intent. We have consistently said that "[s]ummary judgment is an extreme remedy" that "should be granted sparingly in cases involving motive or intent." *Spellman v. American Security Bank, N.A.*, 504 A.2d 1119, 1122 (D.C.1986). Under well-settled principles, the trial court should not have granted summary judgment unless the pleadings and other materials on file demonstrated that no genuine issue as to any material fact remained for trial and that appellee, as the moving party, was entitled to a judgment as a matter of law. *E.g.*, *McCoy v. Quadrangle Corp.*, 470 A.2d 1256, 1258 (D.C. 1983). Appellee had the burden of establishing the absence of any material issue and had to show that he was entitled to judgment under applicable principles of substantive law. *E.g.*, *Burch v. Amsterdam Corp.*, 366 A.2d 1079, 1083 (D.C.1976).

ecute separately his federal and state claims. Thus, the trial court erred by granting summary judgment to appellee based on *res judicata*.

### A.

I understand appellant's argument that appellee expressly consented to claim-splitting to be as follows. After appellant had filed his federal court complaint in July 1985 incorporating both constitutional due process and pendent state claims, the District defendants moved for summary judgment (the first motion) in federal court by arguing in a supporting memorandum:

> Furthermore, 42 USC Section 1983 imposes liability for violations of rights protected by the Constitution not for violations of duties of care arising out of tort law. Remedy for the latter type must be sought in state court under traditional tort-law principles. *Baker v. McCollan, supra,* 443 U.S. [137] at 146, 99 S.Ct. [2689] at 2695–96 [61 L.Ed.2d 433 (1979)]. See also, *Parratt v. Taylor, supra,* 451 U.S. [527] at 545, 101 S.Ct. [1908] at 1917 [68 L.Ed.2d 420 (1981)].

In response, rather than litigating the District defendants' motion, appellant filed in December 1985 an amended federal court complaint that added some defendants, dropped others, and—of significance here—dropped the pendent state claims. Again, the District defendants moved for summary judgment (the second motion) in federal court, arguing in their supporting memorandum in May 1987, that

> since the local courts are available to plaintiff to redress any alleged negligence on part of the defendants ... his complaint must be dismissed.

A month earlier, April 1987, appellant had filed this Superior Court negligence action based on one of the pendent state claims he had dropped from his federal court lawsuit. In May 1987, appellee filed a motion requesting the Superior Court to stay proceedings until the federal claim was resolved. The motion was granted. In December 1987, Judge Hogan—never having ruled on the District's first motion before appellant amended his complaint—granted the District defendants' second summary judgment motion in the federal action. The judge entered judgment on the ground that due process had been available through local remedies which appellant had ignored.

Failure to exercise available adequate state remedies does not entitle a plaintiff to compensation for due process violations. As the United States Court of Appeals for the Third Circuit stated, "substantive mistakes by administrative bodies in applying local ordinances do not create a federal claim so long as correction is available by the state's judiciary." *Cohen v. City of Philadelphia,* 736 F.2d 81, 86 (3rd Cir.), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984) (Third circuit joins First and Seventh Circuits in holding that individual's due process rights are not violated as long as adequate state procedures exist to remedy negligent errors in applying local law).

*Gilles,* 676 F.Supp. at 345 (some citations omitted). In October 1989, appellee Ware filed an answer to appellant's amended complaint in Superior Court, invoking *res judicata* based on Judge Hogan's summary judgment ruling in *Gilles.*

Although the record does not reflect a distinct, express agreement between the parties to waive a *res judicata* defense to appellant's Superior Court negligence action, appellant argues that the District defendants' memorandum supporting their first summary judgment motion in the federal lawsuit effectively was, or reflected, such an agreement, inducing him to drop the pendent tort claims from his federal court lawsuit and to refile in Superior Court. The District defendants' memorandum in support of their second summary judgment motion in the federal lawsuit, he says, confirms this consent.

I cannot agree with appellant's position. Without more on the record, I cannot say the District should be deemed, unilaterally, to have made an express agreement through its pleadings. One possible interpretation of the District's memoranda is that they merely articulated the very basis Judge Hogan used for concluding that constitutional due process had not been violated: failure to use available state remedies.

That is not explicitly to say the District defendants were willing to convert their constitutional defense in federal court—failure to invoke state remedies—into an invitation for appellant to sue a second time, in Superior Court. In short, the record does not support the contention that the District *expressly* consented to claim-splitting.

### B.

Appellant, however, has also argued that the District defendants' memoranda made clear that appellee at least acquiesced in (implicitly consented to) appellant's claim-splitting by failing to object to it, and that such acquiescence waived the *res judicata* defense. *See* RESTATEMENT § 26(1)(a). While Judge WAGNER appears to agree with me that this jurisdiction should adopt the RESTATEMENT rule on claim-splitting, including the test for acquiescence, *see post* at 549, we disagree as to the test's application and as to what evidence is required to support an acquiescence argument in order successfully to oppose a motion for summary judgment. Neither appellee nor the trial court spoke to this issue. In evaluating the summary judgment, Judge WAGNER in effect reverses our standard of review, drawing all favorable inferences *against* appellant, the nonmoving party, and misapplies the RESTATEMENT test for determining acquiescence that she adopts from *Rennie v. Freeway Transport, supra.*

RESTATEMENT (SECOND) OF JUDGMENTS § 26, comment a, states:

> Where the plaintiff is simultaneously maintaining separate actions based upon parts of the same claim, and in neither action does the defendant make the objection that another action is pending based on the same claim [usually called an Objection based on "other action pending"], judgment in one of the actions does not preclude the plaintiff from proceeding and obtaining judgment in the other action. The failure of the defendant to object to the splitting of the plaintiff's claim is effective as an acquiescence in the splitting of the claim. See Illustration 1.[17]

In opposing summary judgment in Superior Court, appellant argued that the District defendants in the federal litigation had moved for summary judgment on appellant's tort claim the first time on the ground that it belonged in Superior Court, and that this motion had led appellant to amend his federal complaint to remove the tort claim and then to file it (this case) in Superior Court. As a consequence of this amendment, the District Court did not rule on the District defendants' first summary judgment motion. Whether the District Court's failure to rule on that motion "resolved" the motion or whether, instead, that motion merely "became moot," *see post* at 552, is wholly irrelevant to the issue here: whether, in his opposition to appellee's motion for summary judgment in Superior Court relying on *res judicata,* appellant sufficiently raised the factual issue of appellee's acquiescence in the claim-splitting, with the result that the burden of going forward to establish the *res judicata* defense shifted back to appellee Ware.

To raise acquiescence, appellant alleged that the District defendants in the federal litigation—including appellee Ware—"repeatedly argued" that appellant should have brought his case in Superior Court.[18]

---

17. Illustration 1 reads:

1. After a collision in which A suffers personal injuries and property damage, A commences in the same jurisdiction one action for his personal injuries and another for the property damage against B. B does not make known in either action his objection (usually called "other action pending") to A's maintaining two actions on parts of the same claim. After judgment for A for the personal injuries, B requests dismissal of the action for property damage on the ground of merger. Dismissal should be refused as B consented in effect to the splitting of the claim.
RESTATEMENT § 26, comment a.

18. It is incorrect for Judge WAGNER to argue that, because appellant did not name appellee Ware as a defendant in the federal litigation until just after the District defendants' first motion for summary judgment in the federal suit, appellee "cannot be held to have acquiesced in claim splitting through a pleading in a case in which he was not then a party." *Post* at 552. Appellant sued appellee for his official acts as an

Appellant cited the District Defendants' first motion for summary judgment in the federal suit to support his factual allegation. That allegation, coupled with the District's action in filing a motion for a mere stay in Superior Court (pending resolution of the federal lawsuit)—rather than filing a motion for dismissal or some other "objection" to the Superior Court suit—sufficiently rebutted appellee's showing in support of summary judgment based on *res judicata*. In short, appellant sufficiently raised the factual issue of appellee's acquiescence in the claim-splitting; he provided more than the "conclusory assertion" Judge WAGNER perceives. *See post* at 553. The trial court, therefore, should have ruled on the acquiescence issue before granting summary judgment as a matter of law based on *res judicata*.

Viewing the record in the light most favorable to appellant as the nonmoving party opposing appellee's motion for summary judgment, I believe it is clear that the trial court did not resolve the factual issue of acquiescence in the claim-splitting. In any event, appellee failed to carry his burden of showing that appellant did not sufficiently raise the consent-to-claim-splitting issue. Appellee altogether failed to proffer anything of record to show that he, or the District defendants earlier, had objected to the claim-splitting when appellant responded to the defendants' expressed concerns in the federal litigation by amending the federal complaint and refiling the negligence action in Superior Court.

Accordingly, if we were to adopt the RESTATEMENT (SECOND) OF JUDGMENTS § 26 rule on acquiescence to claim-splitting—as I believe we should—then it is clear, as a matter of law, that appellee is not entitled to summary judgment based on *res judicata*. After appellant filed his Superior Court complaint he was "simultaneously maintaining separate actions based on parts of the same claim." RESTATEMENT

§ 26, comment a. Thus, in order for appellee to preserve his *res judicata* defense, he was required to file an objection to appellant's Superior Court complaint. He did not do so. "The failure of [appellee] to object to the splitting of [appellant's] claim is effective as an acquiescence in the splitting of the claim." *Id.*

Rather than filing an objection to appellant's Superior Court complaint or filing some other motion that clearly registered appellee's objection to the claim-splitting, appellee merely filed a motion to stay the Superior Court proceedings pending the outcome of the federal court proceedings. I disagree with Judge WAGNER that appellee's motion to stay was tantamount to an objection to appellant's complaint based on the pendency of appellant's federal lawsuit. She cites no authority for that proposition. *See post* at 549–550. In fact, the cases she cites demonstrate that more than a motion to stay is required to preserve a *res judicata* defense when the plaintiff is "simultaneously maintaining separate actions." In *Rennie v. Freeway Transport, supra,* cited *post* at 549, the Supreme Court of Oregon held that the defendant had not acquiesced in the plaintiff's claim-splitting because the defendant had moved to dismiss or abate the state action—immediately after the plaintiff had filed his complaint in state court—on the basis of the plaintiff's pending federal court complaint. 294 Or. at 327–29, 656 P.2d at 924–25. Likewise, in *Funkhouser v. Hurricane Fence Co.,* 524 S.W.2d 780, 782 (Tex.Civ.App.1975), cited *post* at 35, a Texas court of appeals relied on cases cited in Annotation, *Splitting Causes—Waiving Objection,* 40 A.L.R.3d 108 (1971), in applying the RESTATEMENT rule. The Texas court concluded that, because the defendant had failed to file "a plea of another cause pending, or to move for consolidation, or in any manner to bring to the attention of the trial court and the plaintiff the fact that the defendant object-

---

agent of the District of Columbia government and has been represented from the beginning by Corporation Counsel, who also represented all of the other District defendants in the federal action. As such, appellee—represented by the government's lawyer—must be deemed bound

by any acquiescing actions of Corporation Counsel. Furthermore, Corporation Counsel filed the motion to stay the action—without filing an objection to appellant's simultaneous pursuit of relief in federal and Superior Court— in Superior Court on behalf of appellee.

ed to the splitting of the cause of action," the defendant "ha[d] consented to the splitting of the cause of action." *Id.* at 783. *See also Shaw v. Chell,* 176 Ohio St. 375, 382, 199 N.E.2d 869, 874 (1964) (where plaintiff filed suit to recover personal damages while other suit to recover property damages arising from same accident was still pending, failure of defendant to object to either action on ground of other action pending amounted to implied consent to claim-splitting).

A motion to stay pending resolution of another proceeding may be filed for many reasons. For example, a party may acquiesce in a claim-splitting but may want to deal with the lawsuits one at a time. Or, the moving party may want to stay one action in the hopes of reaching a comprehensive settlement with the other party in the other action. In neither instance would the stay motion imply an objection to the existence of the stayed proceeding. In fact, the very idea of a stay is to defer, but affirm, the existence of the stayed action. While there are many reasons to file a motion to stay, there is only one reason to file an unambiguous "Objection Based on Other Action · Pending" or a "Motion to Dismiss Due to Pendency of Other Action": to prevent successive litigation and preserve a *res judicata* defense. Appellee did not do so.

In this case, appellee does not disagree that appellant only split his claims to "cure" his complaint in federal court after the District defendants had filed a motion for summary judgment on the ground that appellant was required to bring his tort claim in Superior Court. It therefore is not surprising that appellee did not file an objection to appellant's Superior Court complaint; given appellee's motion in federal court, the Superior Court is precisely where appellee and the other District defendants wanted appellant to file his tort claim. Judge WAGNER's approach, however, ignores the reality of the case and, in effect, allows appellee to "sandbag" appellant in three easy steps: (1) appellee's (and the other District defendants') actions in feder-

al court led appellant to drop his tort claim from his federal lawsuit and file it across the street in Superior Court; (2) appellee then filed a successful motion to stay the Superior Court suit pending resolution of the federal suit; (3) after winning summary judgment on appellant's constitutional claims, appellee then returned to Superior Court and filed a motion for summary judgment, arguing that appellant's failure to keep his pendent tort claim in his federal complaint, coupled with the federal court's summary judgment order, precluded appellant from litigating his tort claim in Superior Court.

Thus, far from "protect[ing] [appellee] from being harassed by repetitive actions based on the same claim," RESTATEMENT § 26, comment a, appellee's belated invocation of *res judicata* in this case—through astute procedural maneuvering—has unjustly prevented appellant from having any court hear his tort claim.

Accordingly, I conclude the trial court erred in granting appellee summary judgment on the basis of *res judicata.* Furthermore, I would expressly adopt the RESTATEMENT (SECOND) OF JUDGMENTS § 26 bright line rule on claim-splitting. Because appellee failed to file an objection at the time appellant split his claims, I conclude as a matter of law that appellee acquiesced in the claim-splitting, thereby waiving his *res judicata* defense. The judgment should be reversed and the case remanded for trial.

WAGNER, Associate Judge, concurring:

■ I join in Parts II and III of Judge FERREN's opinion, but I concur with Judge REILLY in affirming the order of the trial court granting summary judgment for appellee on different grounds. In my view, the trial court properly granted summary judgment for appellee based upon the *res judicata* effect of the judgment in the prior suit in which appellant sued on an identical claim and failed to join the additional theory of recovery advanced in this case to redress the same alleged wrong.[1] A review of the record fails to disclose a genu-

---

1. *Gilles v. Touchstone,* 676 F.Supp. 341 (D.D.C. 1987).

ine issue of material fact in dispute regarding either the applicability of the doctrine or any defenses to its use. Although enforcement of the rule against claim-splitting, a part of the doctrine of *res judicata,* may be waived by a defendant either by express or implied consent, appellant failed to produce in opposition to appellee's motion for summary judgment evidence that appellee consented by words or conduct to claim-splitting. Moreover, the record reflects appellee's timely objection to defending simultaneously two lawsuits, thus defeating any theory of acquiescence which would preclude appellee from claiming the benefit of the doctrine.

The salient facts pertinent to the issues raised on appeal are as follows. On April 27, 1987, appellant filed a complaint for damages in the Superior Court of the District of Columbia naming appellee, Clifton Ware, as the sole defendant.[2] The complaint, which is against Ware in his individual capacity only, is based on claims of negligence and violation of "[p]laintiff's constitutional and civil rights." Almost two years earlier, appellant had commenced an action in the United States District Court for the District of Columbia against the District of Columbia and several District government officials in their "administrative and individual capacities" based, *inter alia,* on claims of violation of his constitutional rights and negligence. Appellee Ware was not named as a party nor even mentioned in the original complaint in District Court. Appellant filed an amended complaint on July 9, 1985 in the action in District Court, deleting some previously named defendants and adding others, including Ware, and alleging only constitutional claims. *Touchstone, supra,* note 1, 676 F.Supp. at 343–44. The District Court granted a motion to dismiss the case against two of the five defendants, and appellant voluntarily dismissed the action against two others. *Id.* at 344. Therefore, Ware was the only remaining defendant when the District Court heard and granted judgment in his favor. *Id.* The action in the federal court and in this case arose out of the same core of operative facts, which are summarized in the *Touchstone* decision. *See id.*

On May 22, 1987, appellee filed a motion to stay the action in Superior Court, and the trial court granted a stay pending resolution of the case in the District Court. After the stay was set aside, appellee filed an answer asserting as affirmative defenses, *res judicata,* collateral estoppel and the District Court's decision in *Touchstone.* Appellee later filed a motion for summary judgment, which clearly raises the *res judicata* bar based on the "rule against splitting a cause of action." The trial court entered an order granting the motion without opinion.

In reviewing a grant of summary judgment, this court applies the same standard that the trial court applies initially. *Thompson v. Shoe World, Inc.,* 569 A.2d 187, 189 (D.C.1990). In doing so, this court undertakes an independent review of the record to determine whether there are genuine issues of material facts in dispute. *Id.* Although the nonmoving party is entitled to the benefit of all favorable inferences of fact, the nonmoving party must contest material issues of fact with specific evidence and argue pertinent legal theories in opposition to the motion. *Thompson v. Seton Investments,* 533 A.2d 1255, 1257 (D.C.1987). We will affirm the decision granting summary judgment if the record shows there are no genuine issues of material facts in dispute and that, as a matter of law, the moving party is entitled to judg-

---

**2.** No other "District of Columbia defendants" nor any other defendants were ever named in the action in this case. The body of the only complaint filed by appellant in Superior Court reads in its entirety as follows:

1. Jurisdiction of this Court is founded on D.C.Code Sections 11–921 and 13–423 (1981).
2. Between April 26, 1984 and May 18, 1984, Defendant Ware negligently or in violation of the Plaintiff's constitutional and civil rights

placed points on the Plaintiff's Driver's Record at the Bureau of Motor Vehicle Services in the District of Columbia.
3. As a result, the Plaintiff was denied his employment as a taxicab driver and was refused citizenship.

Wherefore, the Plaintiff demands judgment against the Defendant in the amount of $4,500,-000, and for such further relief as the Court may deem appropriate.

ment. *Williams v. Gerstenfeld*, 514 A.2d 1172, 1176 (D.C.1986).[3]

Appellant concedes in his brief that *res judicata* bars here the identical constitutional claim for which judgment was entered against him in the prior lawsuit. *See Henderson v. Snider Bros., Inc.*, 439 A.2d 481, 485 (D.C.1981) (*res judicata* bars, after valid, final adjudication on the merits, relitigation of the same claim between the same parties); *see also Hagans Management Co., Inc. v. Nichols*, 409 A.2d 179, 181 (D.C.1979); *Gullo v. Hirst*, 207 A.2d 662, 663 (D.C.1965). However, he argues that *res judicata* does not defeat his negligence claim because: (1) it was not adjudicated in the prior action; (2) appellee caused him to file two separate lawsuits; and, (3) the federal suit was adjudicated on summary judgment, rather than after a trial. Essentially for the reasons stated in Part III of Judge FERREN's opinion, I agree that appellant improperly split his cause of action when he failed to plead his negligence claim in the federal lawsuit; that *res judicata* principles operate to bar the action in this case, unless appellee waived the rule against claim-splitting; and, that disposition of the federal claim by summary judgment does not preclude application of the doctrine. Therefore, appellant's only remaining basis for claiming that there is a factual dispute for trial is that appellee "cause[d] the second action." This claim can be premised only on the legal theory of appellee's waiver of the preclusive effect of the prior judgment by consent or by acquiescence.

Acquiescence is a recognized exception to claim preclusion rules. *Rennie v. Freeway Transport*, 294 Or. 319, 329, 656 P.2d 919, 925 (1982) (en banc). Waiver by acquiescence can occur when a defendant fails to interpose a timely objection to claim-splitting. *Story v. Rivers*, 220 Ga. 232, 233, 138 S.E.2d 304, 305 (1964). However, the record here reflects that appellee objected timely to prosecution of the second lawsuit. Appellee promptly moved to stay this case, and the court granted the motion pending final disposition of the suit in federal court. The amended complaint in the federal action, containing only appellant's constitutional claims, was filed in December 1985. It had been pending for one and a half years before appellant filed in this court the same constitutional claims and an additional claim based on negligence. Not until appellant filed the second action on April 27, 1987 asserting the additional claim was appellee obligated to object to claim-splitting. He did so expeditiously on May 22, 1987 by filing before answer the motion to stay. Appellee was not entitled at that time to dismissal or judgment in Superior Court because there was as yet no *res judicata* bar to the action. Appellee pursued successfully the only available remedy against simultaneous defense of the two lawsuits, a stay of one of them. After the stay was set aside, appellee immediately filed an answer asserting as an affirmative defense the bar to the claim based on *res judicata*, collateral estoppel, and the court's decision in the federal court.

By filing in this action the motion to stay, appellant timely made known his objection to defending simultaneously in two forums. No more is required of a defendant in order to preserve the *res judicata* defense based on claim-splitting than a timely plea that another cause is pending.

---

**3.** Judge Ferren suggests incorrectly (*see ante* at 543, 544–545, 546), that the trial court's failure to set forth the legal reasons for its decision, including its omission of specific references rejecting any acquiescence claim, precludes affirmance of the judgment. Since the motion for summary judgment was predicated on a *res judicata* bar based on claim-splitting, and the opposition, viewed in its best light, predicated on acquiescence, we must assume that the trial court gave consideration to these issues. Moreover, this court is obligated to examine the record *de novo* against the law which governs these legal theories. *See Thompson v. Seton*

*Investments, supra*, 533 A.2d at 1257. Indeed, this court may sustain a correct judgment for a legal reason different from the one relied upon by the trial court. *Max Holtzman, Inc. v. K. & T. Co., Inc.*, 375 A.2d 510, 513 n. 6 (D.C.1977); *Liberty Mutual Insurance Co. v. District of Columbia*, 316 A.2d 871, 875 (D.C.1974); *Bakal v. Weare*, 583 A.2d 1028, 1030 (D.C.1990). Therefore, the trial court's failure to specify the reason for its ruling does not preclude our review and resolution of whether affirmance is warranted on grounds raised by the parties in support of their respective positions.

*Rennie, supra,* 294 Or. at 327 n. 9, 656 P.2d at 924, 925 n. 9 (motion to dismiss or abate based on pending federal action sufficient to defeat acquiescence exception to claim preclusion rules); *Story, supra,* 220 Ga. at 233, 138 S.E.2d at 305 (waiver of rule against splitting cause of action waived by failure to plead pending action); *Funkhouser v. Hurricane Fence Co.,* 524 S.W.2d 780, 783 (Tex.Ct.App. 1st Dist.1975) (failure to file plea of another cause pending or other form of objection amounts to consent to splitting the cause of action). Contrary to Judge FERREN's assertion, the foregoing cases do not demonstrate that more than a motion for a stay is required to preserve a *res judicata* defense under the circumstances. In *Rennie,* the court found that the defendants had timely raised objection to the simultaneous prosecution of separate actions based on the same factual transaction. 656 P.2d at 924–25. The defendants had filed a motion to dismiss or abate the action based on the pendency of another suit. *Id.* at 920. The trial court denied the motion to dismiss, but granted the plea in abatement, staying the action pending resolution of the earlier filed federal proceeding. *Id.* The *Rennie* court found that the case did not fall within "any 'acquiescence' or 'reserved issue' exception to the claim preclusion rules." *Id.* at 925. In *Funkhouser,* the court concluded that the defendant had consented to the splitting of a cause of action "[b]y failing to file in either action a plea of another cause pending, or to move for consolidation, or *in any manner* to bring to the attention of the trial court the fact that defendant objected...." 524 S.W.2d at 783 (emphasis added). That is not the case here because appellee timely registered his objection to proceeding in two forums by filing the motion to stay. I cannot agree, as Judge FERREN seems to suggest, *ante* at 546–547, that a motion for stay must be couched in terms of "an objection based on 'other action pending.'"

Thus, assuming this jurisdiction were to recognize a presumption of waiver absent a timely objection, appellee's timely motion

to stay prevented its application.[4] *See Rennie,* 294 Or. at 329, 656 P.2d at 925 (where a defendant timely objects to claim-splitting, onus is upon plaintiff to accomplish any necessary joinder). Without such a presumption operating in appellee's favor, once appellee met his initial burden on summary judgment, the burden shifted to appellant to show evidence supporting any legal theory which would defeat the *res judicata* bar to his claim. For after the moving party makes a *prima facie* showing that no genuine issue of fact is in dispute and as a matter of law he is entitled to judgment, the burden shifts to the opposing party to rebut that *prima facie* showing with specific evidence demonstrating contested facts. *Thompson v. Seton Investments, supra,* 533 A.2d at 1257; *Landow v. Georgetown–Inland West Corp.,* 454 A.2d 310, 313 (D.C.1982); *Nader v. de Toledano,* 408 A.2d 31, 48 (D.C.1979), *cert. denied,* 444 U.S. 1078, 100 S.Ct. 1028, 62 L.Ed.2d 761 (1980). To defeat the motion, it is insufficient for the nonmoving party to simply assert a legal theory in defense of the moving party's *prima facie* case. *See Hill v. White,* 589 A.2d 918, 921 (D.C.1991). The nonmoving party's burden is to produce evidence supporting a claimed factual dispute which requires resolution by the trier of fact and which is predicated on a viable legal theory. *Id.; de Toledano,* 408 A.2d at 48. The record reflects that appellant failed to do so.

One of the issues which accounts for the different result reached by my dissenting colleague, Judge FERREN, concerns who had the burden of production on the claim of acquiescence. Therefore, I elaborate further to make clear my position. In my view, consent and acquiescence are not essential elements of appellee's *res judicata* defense. Therefore, in order to meet his initial burden on summary judgment, it was not necessary for appellee to anticipate such legal theories which, if shown by the other side, might preclude him from claiming the benefit of the prior judgment. Rather, the burden was upon appellant, the

---

**4.** Presumptions are not evidence, and they disappear when actual evidence is introduced to

the contrary. *Legille v. Dann,* 178 U.S.App.D.C. 78, 82–83, 544 F.2d 1, 5–6 (1976).

nonmoving party, to identify evidence to support the legal theories of consent or acquiescence if he contended that these principles prevented appellee from relying on the *res judicata* bar.

"The general rule is that a party asserting or pleading an issue has the burden of proof—*i.e.*, burden of persuasion—and its constituent burden of production—*i.e.*, the initial burden of going forward with evidence—as to each material element of such issue in order to prevail." *de Toledano, supra,* 408 A.2d at 48; *Imhoff v. Walker,* 51 A.2d 309, 311 (D.C.1947); *National Motor Freight Traffic Ass'n v. United States,* 242 F.Supp. 601, 605 (D.D.C.1965); *United Electrical Radio & Mach. Workers v. General Electrical Co.,* 127 F.Supp. 934, 942 (D.D.C.1954); *Doughty v. Prettyman,* 219 Md. 83, 148 A.2d 438, 441 (1959). Once a party meets his or her burden of production on all issues which establish his or her *prima facie* case, the burden shifts to the opposing party to produce contradictory evidence or evidence supporting a viable legal defense to the claim. *See de Toledano,* 408 A.2d at 48. The burden of evidentiary production shifts from side to side on summary judgment as it does at trial. *See id.* Applying these principles to this case, once appellee discharged his initial burden of demonstrating undisputed facts supporting the *res judicata* bar of the prior action, the burden shifted to appellee to offer competent evidence showing some basis to preclude appellee from relying on the defense. *See id.; see also Landow, supra,* 454 A.2d at 313. Appellant failed to identify evidence, and the record contains none, showing a disputed factual issue or evidence which, if proved, would estop appellant from relying on the bar of the prior judgment.

Essentially, appellant asserted in his opposition that the District Court ruled in *Touchstone,* and appellee argued before the District Court, that the suit should have been filed in a local court. Appellant supported these assertions with three quotations: the first from the *Touchstone* opinion; the second from a motion to dismiss appellant's original complaint in which appellee is not named as a party;[5] and the third purportedly taken from a Memorandum of Points and Authorities in support of Defendant's (appellee here) Motion to Dismiss or In the Alternative for Summary Judgment.[6] Appellant contends that the following quote from *Touchstone* reflects the District Court's ruling that appellant's tort claims should have been brought in a local court:

> "substantive mistakes by administrative bodies in applying local ordinances do not create a federal claim so long as correction is available by the state's judiciary." *Cohen v. City of Philadelphia,* 736 F.2d 81, 86 (3rd Cir.), *cert. denied,* 469 U.S. 1019, 105 S.Ct. 434, 83 L.Ed.2d 360 (1984)."

*Touchstone, supra,* 676 F.Supp. at 345. The quotation is taken out of context, and appellant's characterization does not reflect accurately the District Court's holding. In fact, the court determined that appellant had, but did not avail himself of, adequate remedies to appeal the adverse administrative decision of the District of Columbia Bureau of Motor Vehicles Services (BMVS).[7] The court observed that due process is satisfied by the existence of these adequate state remedies and that the "[f]ailure of [appellant] to exercise his rights of appeal does not mandate that a due process violation existed." *Id.* at 345–46. The opinion makes clear that the adequate remedies referred to are the appeal procedures for correcting the adverse administrative action. It was on this basis that the court granted summary judgment

---

5. In his response to appellee's statement of Material Facts Not in Dispute, appellant stated that he filed his original complaint in District Court on July 9, 1985 and that "[appellant] Ware was not a party to that action." A copy of the complaint is appended as an exhibit to the pleading and supports the statement.

6. Neither motion is included in the record, and there is nothing in appellant's opposition to indicate that the motions were before the trial court as exhibits to the opposition.

7. The agency's decision was based on points erroneously placed on appellant's driving record by appellee Ware. *Touchstone, supra,* 676 F.Supp. at 345.

for Ware, holding that "[f]ailure of [appellant] to exercise available adequate state remedies [does] not entitle [appellant] to compensation for due process violations." *Id.* The *Touchstone* decision does not address, as appellant argues, the effect of the availability to an aggrieved party of separate tort remedies against a government employee whose negligence results in adverse administrative action. Thus, there is no basis for concluding that the District Court ruled that appellant's pendent claims, if any, should have been filed in local court nor that its decision was premised on an argument to that effect made by appellee Ware which can be considered in this case as evidence of appellee's consent or acquiescence to claim-splitting.

The second quote upon which appellant relies as evidence of acquiescence is taken from a pleading filed in the *Touchstone* case before appellee was even made a party to the action. That motion, which was filed by the former defendants, was never resolved and became moot when appellant amended his complaint, eliminating the tort claims which had been joined originally, deleting some defendants, and naming additional defendants, including appellee. *See Touchstone, supra,* 676 F.Supp. at 343–44. Appellee cannot be held to have acquiesced in claim-splitting through a pleading filed by other defendants in a case in which he was not then a party. The fact that appellee was represented by the same lawyer as the defendants in the original complaint does not alter the result. As to

appellee, the case in District Court commenced with the filing of the amended complaint which alleged only constitutional claims. *See Peabody v. O'Leary,* 102 N.H. 496, 498, 161 A.2d 167, 169 (1960); *Lewis v. Hines,* 81 N.H. 24, 120 A. 728 (1923). I can locate no authority, and Judge FERREN provides none, which binds an added party to representations or arguments in a pleading filed on behalf of the original parties before he was joined, particularly with respect to his individual rights related to claims never asserted against him in that action.[8] Moreover, the language in the excerpt upon which appellee relies cannot be viewed as an assent to a second suit.[9] The statement from the pleading of other parties in *Touchstone* appears to be simply a legal argument that a constitutional claim, such as the one asserted, does not lie for ordinary tort claims.

Finally, appellant quotes one other passage, purportedly from the Memorandum of Points and Authorities filed by appellee in the *Touchstone* case, which reads as follows:

> Thus, since the local courts are available to plaintiff to redress any alleged negligence on the part of defendants ... his complaint must be dismissed.

I use the word purportedly because appellant failed to provide the court below with a copy of the pleading, authenticated, certified or otherwise. *See* Super.Ct.Civ.R. 56(e).[10] The unavailability of the complete

---

**8.** In the original complaint filed in District Court, appellant sued several District of Columbia officials "both in their administrative and individual capacities." *Touchstone, supra,* 676 F.Supp. at 343. Appellee was not a party to the action originally. *Id.* at 343 n. 4 & 344. The claim ultimately resolved favorably to appellee in *Touchstone* was appellant's claim for damages based on the allegation that "the individual defendant [appellee here] violated plaintiff's [appellant here] constitutional rights...." *Id.* at 344. Similarly, appellant's allegations in the complaint in Superior Court are against the individual Ware for negligence or violation of appellant's constitutional rights.

**9.** The quote in the pleading is taken almost verbatim from the Supreme Court case relied upon by appellee in making the argument. That quote is as follows:

Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. Remedy for the latter type of injury must be sought in state court under traditional tort-law principles.

*Baker v. McCollan,* 443 U.S. 137, 146, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979). This single quote, which sets forth the legal principle specifying when a 1983 claim will or will not lie, even if it had been advanced by appellant, is insufficient to provide a basis for the conclusion that appellee acquiesced in claim-splitting.

**10.** Super.Ct.Civ.R. 56(e) provides in pertinent part:

Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence.... Sworn or certified copies of all

pleading impedes consideration of the significance of the statement. Appellant must bear any consequences of his failure to support the opposition as required by Super.Ct.Civ.R. 56. However, the foregoing quotation appears to be no more than a reiteration of the legal proposition that a section 1983 action is not viable for wrongs for which local courts provide remedies. *See Cohen v. City of Philadelphia, supra,* 736 F.2d at 81. In my opinion, standing alone, this quote from a legal argument cannot be regarded as evidence that appellee assented to or acquiesced in appellant's filing of a separate tort action in Superior Court, and it is insufficient evidence of acquiescence to rebut appellee's initial showing of entitlement to summary judgment.

At best, appellant offered no more than a conclusory assertion of the availability of evidence of acquiescence. A conclusory assertion is insufficient to defeat a movant's *prima facie* showing of entitlement to summary judgment as a matter of law. *See Spellman v. American Security Bank, N.A.,* 504 A.2d 1119, 1122–23 (D.C. 1986). The opposing party must rebut that showing with specific evidence which supports his legal theory. *See id.* In my opinion, appellant's opposition to the motion failed to meet that burden. Nor is there anything else in the record on appeal which supports the claim that appellee consented to or acquiesced in defending separate lawsuits. If there were such evidence of record, it is appellant who has the bur-

den of demonstrating error and producing "a record sufficient to show affirmatively that error occurred." *See Cobb v. Standard Drug Co., Inc.,* 453 A.2d 110, 111 (D.C.1982); *see also Tung v. W.T. Cabe & Co., Inc.,* 492 A.2d 267, 269–70 n. 4 (D.C. 1985). Appellant has failed to do so.

Although the trial court's order granting summary judgment was entered without opinion, I cannot agree with Judge FERREN that the acquiescence issue was not considered and properly resolved by the trial court. Appellee specifically argued the claim-splitting theory in his memorandum of points and authorities in support of summary judgment, as excerpts from his pleading, which are reproduced in footnote 9 *supra,* show.[11] Judge FERREN agrees that appellant sought to defeat the motion by a claim of acquiescence. There is no reason to conclude that the trial court failed to examine the record, as it was required to do,[12] or failed to apply all pertinent legal principles in reaching its decision. Since appellant asserted what may be viewed as the legal theories of consent or acquiescence, the trial court necessarily considered as a matter of law the effect of the motion to stay on appellant's claim of consent or acquiescence. *See supra* note 3.

For the reasons stated previously, the legal effect of the timely filing of another action pending is to preclude operation of any presumption of waiver of the preclusive effect of the former judgment. If there is reason for the trial court to have

---

papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith.... When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial.

**11.** Appellee Ware argued, *inter alia,* on the point:

Applying the federal definition of a "cause of action" and the rule against splitting a single cause of action to this case, plaintiff's prior civil rights action and the instant negligence action arise out of the same core of operative facts, ... Since the two lawsuits involve this

single core of operative facts, they constitute identical causes of action for *res judicata* purposes. Although this single group of facts may conceivably give rise to both federal claims for relief and negligence claims, under the federal definition, a single cause of action remains ... Thus, the federal *res judicata* doctrine precludes plaintiff from litigating any matters that he could have raised in the previous lawsuit, including negligence, which were within the federal court's pendent jurisdiction.

**12.** In considering a motion for summary judgment, the trial court must conduct an independent review of the record, at least in the factual and legal context presented by the parties. *Vessels v. District of Columbia,* 531 A.2d 1016, 1018–19 (D.C.1987); *see Thompson v. Shoe World, Inc., supra,* 569 A.2d at 189.

concluded otherwise, *it is appellant's burden* to demonstrate it. There is a presumption of the validity of the trial court's judgment, and the burden is upon appellant to convince the court that the trial court erred. *Cobb, supra,* 453 A.2d at 111. "In meeting that burden, it is appellant's duty to present this court with a record sufficient to show affirmatively that error occurred." *Id.* The record on appeal in this case does not support a claim of error. Given the absence of any presumption of waiver and appellant's failure to show sufficient evidence supporting a factual dispute predicated on the legal theories of consent or acquiescence, the trial court properly granted summary judgment for appellee based on the *res judicata* effect of the prior judgment. Accordingly, for the foregoing reasons, I join with Judge REILLY in affirming the decision of the trial court.

REILLY, Senior Judge:

■ I concur with Judge Ferren's analysis of the thorny question of pendant jurisdiction and his conclusion that a summary judgment entered against a plaintiff by a federal district court is a bar to an action in the Superior Court based on the same set of facts, but advancing a different set of allegations, if such allegations could have been incorporated into the federal complaint. But, I disagree with his final conclusions (Part IV), that the judgment should be reversed and the case remanded for trial on the ground that the District (defendant in both actions) lost its right to invoke *res judicata* as a defense by failing to raise a timely objection to claim splitting. The excerpt from RESTATEMENT (SECOND) ON JUDGMENTS, § 26 on which Judge Ferren relies, is directed at cases where each of the courts in which plaintiff is maintaining separate actions was vested with jurisdiction to decide the totality of all the claims asserted. Such was the situation portrayed by the commentator's illustration. In my view, however, where the trial court, as in the case before us, never had jurisdiction to entertain appellant's action, neither consent nor waiver on the part

of the *defendant* could confer upon that forum, jurisdiction which was non-existent.

Apparently, Judge Ferren felt nevertheless that it was incumbent upon our court to examine the asserted impact of the judgment of the federal district court in *Gilles v. Touchstone,* 676 F.Supp. 341, 346 (D.D.C.1987), as the doctrine of *res judicata* was the only reason advanced by the District for granting its motion for summary judgment.[1] It is well established, however, that an appellate court may *sua sponte* take judicial notice of a jurisdictional defect, irrespective of whether such point was made by the parties in the lower court or even raised at all. *See Langley v. District of Columbia,* 277 A.2d 101 (D.C. 1971). It is also fundamental that if a record discloses some valid ground for supporting the judgment of a trial court—in contradistinction to a decision of an administrative agency—such judgment should not be vacated on appeal. *SEC v. Chenery Corp.,* 318 U.S. 80, 63 S.Ct. 454, 87 L.Ed. 626 (1943). *See also Colautti v. Franklin,* 439 U.S. 379, 397 n. 16, 99 S.Ct. 675, 686, 58 L.Ed.2d 596 (1979); *Dandridge v. Williams,* 397 U.S. 471, 475 n. 6, 90 S.Ct. 1153, 1156 n. 6, 25 L.Ed.2d 491 (1970); *Marinopoliski v. Irish,* 445 A.2d 339, 340 (D.C.1982) ("A lower court decision must be affirmed if the result is correct, despite the fact that the court 'relied upon the wrong ground or gave the wrong reason.' ").

In my opinion, the challenged judgment should be summarily affirmed without reaching the question of *res judicata* at all. Had appellant kept away from the federal district court and filed his complaint only in the Superior Court, the latter would have had no option other than to dismiss on jurisdictional grounds, as the only court empowered to grant relief from the erroneous suspension or revocation of a driver's license by the Bureau of Motor Vehicles Services is this court. A provision in the governing statute, D.C.Code § 40–635 (1981), makes this crystal clear.

---

1. It was not until this appeal was filed that the District adverted to the jurisdictional issue as an alternative ground for affirming the judgment of the trial court.

As Judge Ferren's summary of the facts discloses, all the damages incurred by appellant (loss of wages, rejection of his petition for citizenship, *etc.*), stems from a bookkeeping error by the Bureau which resulted in a notice of proposed revocation of his driver's license, alleging a record which showed traffic violations totalling some 44 points. Appellant appeared at the scheduled hearing to deny commission of such traffic offenses, but the hearing examiner ruled against him and revoked his driver's license.

Although appellant was aware of his right to appeal the examiner's decision to the Board of Appeals and Review, D.C.Code §§ 40–631, –364 (1990),[2] he did not exercise this right. Had he done so, and had the Board refused to correct the record on which the erroneous point score was based, he could have obtained judicial redress by filing a petition for review here pursuant to D.C.Code § 1–1510, accompanied by a motion to stay the agency order. *See Kuflom v. District of Columbia Bureau of Motor Vehicles Services*, 543 A.2d 340, 342 (D.C.1988).

It was not until a year after the revocation order had become effective that appellant by letter of counsel to the head of the agency took any steps to challenge the legality of such order. By that time his failure to exhaust his administrative remedy had cost him his right to judicial review in this court. *Gosch v. District of Columbia Department of Employment Services*, 484 A.2d 956 (D.C.1984).

Obviously, a person who suffers harm by his own failure to appeal a decision he could have challenged—and arguably prevented—has no standing to recover damages in a trial court for the collateral consequences of not availing himself of his legal rights. *See DeLevay v. District of*

*Columbia Rental Accommodations Commission*, 411 A.2d 354, 359 (D.C.1980).

---

2. At oral argument, counsel explained that appellant did not exercise his right of administrative appeal, because the financial hardship resulting from the order of revocation was alleviated by the issuance of a restricted license which enabled him to operate his taxicab during daylight hours six days a week. Eventually, however, the revocation decision caused him real financial damage, because the Hackers Board suspended his cab license and his petition for naturalization was turned down because of his apparent record as a persistent violator of traffic laws.